IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Energy Intelligence Group, Inc., and )
Energy Intelligence Group (UK) Ltd., )
                                      )
                        Plaintiffs,   )
                                      )        Case No.: 20-cv-3983
            v.                        )
                                      )        Honorable Joan B. Gottschall
Exelon Generation Co.,                )
                                      )
                        Defendant.    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Energy Intelligence Group, Inc., and Energy Intelligence Group (UK) Ltd.,

have filed a one-count complaint for copyright infringement, ECF No. 1, against Exelon

Generation Co. ("Exelon"). The complaint alleges that Exelon employees forwarded emails to

which plaintiffs' copyrighted trade publications were attached. *See* Compl. ¶¶ 21–34, 42-46,

ECF No. 1. Plaintiffs infer copying from data showing that many different users using unique

devices accessed some of these emails on the same day. *See* Compl. ¶¶ 35–39.

Exelon moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for failure to state a claim upon which relief can be granted, as partially barred by the

statute of limitations, and because an attachment to the complaint allegedly contradicts the

complaint's allegations. ECF No. 27. For the reasons that follow, the court denies the motion,

although whether the complaint plausibly pleads copying of plaintiffs' copyrighted works

presents a close question.

### I. Summary of the Complaint

Because this case comes before the court on a Rule 12(b)(6) motion, the court

summarizes the complaint's well-pleaded facts in the light most favorable to plaintiffs. *See*

*Taha v. Int'l Brotherhood of Teamsters, Local 781,* 947 F.3d 464, 469 (7th Cir. 2020) (citing

*Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)).  Plaintiffs produce several

newsletters and other trade publications reporting on the global energy industry, including the

publication at issue here, Nuclear Intelligence Weekly ("NIW"), which plaintiffs have produced

since 2011.  *See* Compl. ¶¶ 8–14.  Plaintiffs offer their customers various subscription options.

Compl. ¶ 16.  "Subscribers typically obtain NIW and Plaintiffs' other publications by email

and/or from Plaintiffs' website, which permits password-protected access to archived and/or

current issues, pursuant to a subscription or license agreement."  *Id.*  Individual articles and

newsletter issues can also be purchased from plaintiffs' website.  *See* Compl. ¶¶ 16–18.

"From at least as early as November 2011 through the present, Defendant has maintained

a subscription for two of its employees to each receive a single-copy [sic] of NIW and the

articles therein by email delivery."  Compl. ¶ 29.  One of the recipients of NIW at Exelon has

been Kenneth Peterson ("Peterson"), vice president, Nuclear Fuels.  Compl. ¶¶ 30–31.  Plaintiffs

attached a sales order for NIW dated November 19, 2018, invoice, terms and conditions, and

receipt for payment (collectively, the "subscription agreement") to the complaint as exhibit D.

*See* Compl. ¶¶ 32-34; Compl. Ex. D, ECF No. 1-4.  As discussed below, the parties disagree

about the scope and meaning of the subscription agreement.

Also attached to the complaint is a sample email transmitting an issue of NIW to

Peterson.  Compl. Ex. C, ECF No. 1-3.  The body of the email contains a short summary of the

headlines of the NIW issue.  *See id.* at 2.  A notation on the email message states that a Portable

Document Format ("PDF") file containing the NIW issue is attached.  *See id.* at 2; *see also*

Compl. Ex. A, ECF No. 1-1 (sample issue of NIW).

Plaintiffs base their claim of infringement on an analysis of data gathered by the third-party service they use to deliver NIW to defendant. Compl. ¶ 35. According to that data, "Although neither Plaintiffs nor the Delivery Service have ever accessed Defendant's servers or computer systems, various employees of Defendant have downloaded certain information and images contained in the cover email provided with each issue of NIW." *Id.* The data show "the emails delivering NIW were opened multiple times each day, using multiple unique devices." Compl. ¶ 36. For instance, plaintiffs plead, on information and belief, that the email delivering the NIW issue dated March 15, 2019, was opened "approximately 102 times on 35 unique devices." Compl. ¶ 37. Furthermore, "[b]etween July 20, 2018 and October 18, 2019, the approximately 65 emails delivering NIW to Kenneth Petersen during that period were opened 880 times on 159 unique devices." Compl. ¶ 38 (alleged on information and belief). Based on these data, plaintiffs plead that Peterson has been reproducing and distributing, i.e., forwarding, issues of NIW. *See* Compl. ¶¶ 36–38.

## II. Failure to State a Claim

Exelon's motion to dismiss tests the complaint's sufficiency, not the merits of the case. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). Defendant argues that the complaint does not plead a plausible copyright infringement claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). Exelon opens its motion to dismiss not with a legal argument but with an attack on plaintiffs' purported business model. *See* Mem. Supp. Mot. to Dismiss 2-3, ECF No. 27-1. Exelon accuses plaintiffs of intellectual property trolling, i.e., maintaining a business model centered more on litigation than on creating works that advance science and the useful arts. *See* U.S. Const., art. I, § 8, cl. 8. The Seventh Circuit discussed the systemic problem of intellectual property trolling in the

3

background of its opinion in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097–98 (7th Cir. 2017). While the systemic increase of intellectual property trolling has been acknowledged by courts, scholars, and the media, *see id.*, that does not mean that the legal standards governing any particular case change because plaintiff is accused of trolling. *See id.* at 1099–1108 (applying ordinary summary judgment principles). To the extent defendant argues for a heightened pleading standard because it claims that the plaintiffs are trolling, the Seventh Circuit expressly rejected a heightened pleading standard for copyright infringement claims in *Mid America Title Company v. Kirk*, 991 F.2d 417, 421–22 (7th Cir. 1993). The court therefore tests plaintiff's complaint against the same standards as it would any complaint and makes no finding on defendant's accusations of intellectual property trolling.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires every complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "In assessing the complaint's sufficiency, the court accepts all well-pleaded facts in the complaint, but not legal conclusions, as true and draws reasonable inferences in the plaintiff's favor. *Id.* (citing *Twombly*, 550 U.S. at 555). To state a claim for copyright infringement based on unauthorized copying or distribution, plaintiffs must plausibly allege two elements: "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (quoting *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007)).

### A. *Ownership of a Valid Copyright*

Exelon argues that the complaint does not adequately identify any specific work that was allegedly infringed. Mem. Supp. Mot. to Dismiss 7–8. Courts have implied a requirement that the complaint identify the allegedly infringed work from the elements of copyright infringement. *See, e.g., Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012). The complaint must identify the allegedly infringed work to the extent necessary to plead the two elements of copyright infringement. *See id.*

Defendant takes issue with paragraph 20 of the complaint here, which makes a laundry list of over 100 publications plaintiffs have registered with the copyright office. *See* Compl. ¶ 20. Including such a list satisfies the first element of copyright infringement by alleging ownership. But a list of copyrighted works by itself leaves to speculation which, if any, works the defendant allegedly copied. *See Flava Works, Inc. v. Gunter*, 2018 WL 620035, at *3 (N.D. Ill. Jan. 30, 2018); *Clavio*, 2012 WL 2459146, at *2.

Other paragraphs of the complaint in the case at bar plausibly narrow the universe of works defendant allegedly copied. Plaintiffs allege that Exelon has subscribed to NIW since 2011 and that Peterson and one other individual have received NIW issues by email. *See* Compl. ¶¶ 29–31. The complaint then alleges that Peterson has copied and distributed issues of NIW since Exelon subscribed in 2011 and cites two specific instances of alleged copying occurring in 2018 and 2019. *See* Compl. ¶¶ 35–39.

5

Defendant cites no authority to support its argument that plaintiffs must be more specific, such as by identifying the exact dates of each and every issue of NIW alleged to have been copied. *See* Mem. Supp. Mot. to Dismiss 9-10. That level of specificity would go beyond the short and plain statement required by Rule 8(a)(2) by requiring plaintiff to plead the details of the third-party email delivery data summarized in paragraphs 36–39 of the complaint. The fair notice pleading standard does not require, and in fact eschews, such "elaborate factual recitations." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (citation omitted). The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). As another court stated when considering a motion to dismiss a complaint filed by these plaintiffs, "By providing a start and end date to the period of alleged infringement, Plaintiffs have stated 'enough factual allegations to provide notice of the period of time during which infringement occurred.'" *Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 340 (S.D.N.Y. 2015) (quoting *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F.Supp.3d 501, 508 (S.D.N.Y. 2015)).

### B. Copying of Original Elements

Exelon also contends that the complaint fails the plausibility test because it "does not allege any specific act of copying, nor any information such as the who, how, and when any specific work was improperly copied." Mem. Supp. Mot. to Dismiss 8. Defendant's insistence on pleading the who, how, and when of copyright infringement resembles the heightened pleading standard for claims sounding in fraud or mistake under Rule 9(b) of the Federal Rules of Civil Procedure. The Seventh Circuit has stated that it "cannot accept the argument that plaintiffs in cases such as this one must be held to a particularity requirement akin to [Rule] 9(b)." *Mid Am. Title Co. v. Kirk*, 991 F.2d 417, 421–22 (7th Cir. 1993). The complaint

must state a plausible claim that defendant copied or redistributed NIW without authorization under Rule 8(a)(2)'s less burdensome standard. *Id.*

To be sure, plaintiffs rely on a chain of inferences from their email delivery data to plead that Exelon has copied and distributed issues of NIW. Plaintiffs point to data showing that NIW cover emails were opened by multiple users and on multiple devices. *See* Compl. ¶¶ 36-38. Viewed favorably to plaintiffs, the fact that these emails were opened multiple times per day on hundreds of unique devices is consistent with Peterson's forwarding the emails, though that is by no means the only possible explanation. *See id.* And if Peterson forwarded the NIW cover emails to colleagues, plaintiffs assert that it is at least plausible that he copied and distributed the attached issue of NIW.[1] *See id.* ¶¶ 42, 44.

The parties cite no case in which a plaintiff used data tracking when and on what devices an email was opened to support a copyright infringement claim. Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The plaintiff's need for discovery is a relevant consideration when determining whether a complaint gives fair notice of a claim. *See Leaf, Inc. v. Burdeen*, 1996 WL 89070, at *3 (N.D. Ill. Feb. 28, 1996) (denying motion to dismiss copyright infringement claim). The plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations." *Brooks v. Ross*, 578 F.3d 574, 581

---

[1] The parties appear to assume that forwarding an email with a protected work attached (the court infers favorably to plaintiffs that Peterson included attachments) constitutes an act of copyright infringement. The court does not explore this complex issue further. *See generally* Kenneth R. L. Parker, *Gray Works: How the Failure of Copyright Law to Keep Pace with Technological Advancement in the Digital Age Has Created A Class of Works Whose Protection Is Uncertain . . . and What Can Be Done About It*, 21 J. Intell. Prop. L. 265, 272–78 (2014).

(7th Cir. 2009) (citing *Twombly*, 550 U.S. at 556); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

It is thus relevant, but by no means dispositive, that plaintiffs argue that without discovery they cannot plead more facts supporting their copying claim because Exelon controls the email servers on which the needed information resides. Exelon does not disagree; it argues that by requesting discovery plaintiffs have proven that they should not be given leave to amend their complaint because they cannot plead facts needed to state a claim. Reply 2, ECF No. 30. But this argument begs the question of whether the complaint pleads a plausible claim in the first place.

Given that defendant controls access to the information needed to plead with greater specificity, the complaint's allegations "nudge" plaintiff's infringement claims "across the line from conceivable to plausible," although this is a close question. *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570). While other inferences are possible, one plausible explanation for the data showing NIW cover emails were opened hundreds of times on different devices is that Peterson, or someone else, forwarded the emails, and others viewed them and the attached issues of NIW. *See* Compl. ¶¶ 36–39, 42-44. Indeed, defendant does not suggest another explanation, and none comes readily to mind. At least one other court has found data showing an unexplained access pattern consistent with unauthorized copying and distribution sufficient to raise a plausible inference of copyright infringement. *See Energy Intel. Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 340–41 (S.D.N.Y. 2015) (holding that allegations of copying newsletters were plausible where same defendant's employee accessed newsletters from computers on two different continents on the same day). Exelon cites no case holding that an inference of copying

8

cannot be drawn from unexplained patterns of email messages being opened on hundreds of different devices. Accordingly, the complaint satisfies the strictures of Rule 8(a)(2).

### III.  Limitations and License

Exelon advances two additional arguments: (1) the three-year statute of limitations for copyright infringement, 17 U.S.C. § 507(b), partially bars plaintiffs' claims; and (2) exhibit D to the complaint demonstrates, in effect, that defendant had a license to reproduce and distribute issues of NIW internally. Mem. Supp. Mot. to Dismiss 10–13. As plaintiffs observe, both arguments–limitations and license–raise an affirmative defense which Exelon bears the burden to plead and prove. *See* Fed. R. Civ. P. 8(c) (listing limitations among affirmative defenses); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670–72 (2014) (limitations); *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)) (other citation omitted) (license).

A plaintiff need not anticipate an affirmative defense in a complaint and has no duty to plead facts negating an affirmative defense. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (citing *Stuart v. Local 727, Int'l Brotherhood of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). "However, 'when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299–300 (7th Cir. 2018) (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp*, 665 F.3d 930, 935 (7th Cir. 2012)). This is sometimes referred to as pleading oneself out of court. *E.g.*, *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009). Plaintiffs argue that the complaint does not include all the facts necessary to prove Exelon's limitations and license defenses. The court agrees.

### A. *Limitations*

For limitation purposes, copyright infringement claims accrue separately. *Petrella*, 572 U.S. at 671. "[W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation." *Id.* The Seventh Circuit has adopted "a discovery rule in copyright cases: '[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights.'" *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (alteration in original) (citing *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004)) (other citation omitted); *see also id.* at 614-15 (holding that *Petrella* did not change the discovery rule).

When plaintiffs' claims accrued does not need to be determined at the Rule 12(b)(6) stage. "[I]n light of *Petrella*, we now know that the right question to ask in copyright cases is whether the complaint contains allegations of infringing acts that occurred within the three-year look-back period." *Chi. Building Design*, 770 F.3d at 616. If the answer is yes, the complaint survives a Rule 12(b)(6) motion. *Id.* The complaint here alleges acts of copying–email forwarding by Peterson–in 2018 and 2019 within the three-year limitation period, so plaintiffs have not pleaded themselves out of court. *See id.*; Compl. ¶¶ 36–38. Because it is defendant's burden to plead and prove limitations and the accrual date, no further analysis is required at this stage.

### B. *License*

Exelon also argues that the subscription agreement attached to the complaint as exhibit D contradicts the complaint's allegations that Exelon's use of NIW was limited to two users. *Compare* Compl. ¶ 29 *with* Compl. Ex. D. As defendant argues, the court can consider exhibit D on a Rule 12(b)(6) motion because it is attached to the complaint. *See* Fed. R. Civ. P. 10(c).

10

"[W]hen the plaintiff relies on a document attached to the complaint and does not deny its accuracy, the facts communicated by that document control over allegations to the contrary." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020).

The Copyright Act provides that anyone who violates one of the exclusive rights granted by a copyright is an infringer. 17 U.S.C. § 106. The exclusive rights include the rights to copy and distribute the work. *Id.* To establish a license, Exelon must show that plaintiffs either authorized it to copy and distribute issues of NIW through a written license or through an express or implied nonexclusive license.[2] *See Muhammad-Ali*, 832 F.3d at 762; *I.A.E.*, 74 F.3d at 775-76.

Although its briefing is not entirely clear on this point, Exelon appears to be contending that the exemplar subscription agreements attached to the complaint granted Exelon a written license to reproduce and redistribute NIW on an unlimited basis. *See* Mem. Supp. Mot. to Dismiss 10–11. Plaintiffs counter, without citing authority, that construction of the subscription agreement is a question of fact. Resp. 11, ECF No. 29.

Ordinary rules of contract construction generally apply to copyright license agreements. *Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) (citation omitted). Under Illinois law,[3] which does not vary materially from basic contract law principles in this regard, the court must first determine whether a written contract is ambiguous as a matter of law. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009) (citing *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009)). If the contract is ambiguous, then the court may look to

---

[2] Exclusive licenses must be granted in writing while nonexclusive licenses may be granted orally or implied from conduct. *See I.A.E.*, 74 F.3d at 775; 17 U.S.C. § 204(a). The court does not understand Exelon to be arguing that it had an exclusive license.

[3] Exelon notes that the subscription agreement includes a choice of law clause in favor of New York law. *See* Compl. Ex. D at 4. The parties have not briefed the enforceability of this clause.

extrinsic evidence to ascertain the parties' intent. *Id.* at 380. (citing *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007)). In short, "[c]onstruing an unambiguous contract is a question of law; construing an ambiguous contract is a question of fact." *Homeowners Choice, Inc. v. Aon Benfield, Inc.*, 895 F. Supp. 2d 889, 892 (N.D. Ill. 2012) (citing *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009)), *aff'd* 550 F. App'x 311 (7th Cir. 2013).

To show it has a license, Exelon points to the following sentence in the terms and conditions accompanying the subscription agreement: "EIG [Energy Intelligence Group] Services may be accessed and/or used solely by the individual(s) expressly named on this invoice under the 'Shipped to' notation." Compl. Ex. D at 4. Exelon points out, Mem. Supp. Mot. to Dismiss 11, that its corporate name, rather than an individual's name, appears in the "ship to" field. *Id.* at 3.

The foregoing language of the terms and conditions raises the question: Does authorizing a user to "access and/or use" plaintiffs' services grant permission to reproduce and redistribute issues of NIW? Yet Exelon assumes the answer without citing any cases and without analyzing principles of contract interpretation. *See* Mem. Supp. Mot. to Dismiss 10–11. Exelon acknowledges that the terms and conditions may be ambiguous, but it takes no position on the issue other than to argue that any ambiguity should be resolved in its favor. *Id.* at 11 n.3.

Neither side undertakes a meaningful contract interpretation analysis, and it is not the court's role to analyze complex contractual, or any other, questions without the benefit of adequately developed briefing. *See Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 364 (7th Cir. 2015) (holding that legal argument under contract law supported by no citation to applicable authority was underdeveloped); *Echo, Inc. v. Timberland Machs. &*

12

*Irrigation, Inc.*, 661 F.3d 959, 967 (7th Cir. 2011) (holding a three-sentence argument on breach of contract claim was underdeveloped and waived the issue).

The question of whether the terms and conditions are ambiguous is more complicated than the briefing suggests. Several other provisions of the terms and conditions appear highly relevant. For instance, despite Exelon's corporate name appearing in the "ship to" field of the invoice, the terms and conditions state that "[a]n Authorized User can only be a living individual and never a company, organization or any other entity . . . . Each Authorized User is authorized to access and use the EIG Services on an individual, per-person basis . . . . Except as expressly provided in this Subscription Agreement, nothing contained herein shall be construed as conferring any additional license or right under any copyright or any other intellectual property right." Compl. Ex. D at 4. The terms and conditions also specifically state: "No material from any part of the EIG Services may be copied, modified, translated, altered, amended, downloaded, archived, transmitted, posted, broadcast, transferred, forwarded, assigned, reproduced or in any other way used or otherwise disseminated in any form for the benefit of any unauthorized third party not subject to a valid and subsisting license agreement." *Id.* And the sample email message transmitting an issue of NIW attached to the complaint similarly warns the recipient that forwarding the email constitutes an intellectual property violation. *See* Compl. Ex. C at 2. Because these and other contract interpretation issues have not been adequately addressed, the court cannot conclude that the complaint and the subscription agreement contain all of the facts necessary to establish Exelon's license defense.

## IV. Conclusion

For the reasons stated, defendant's motion to dismiss the complaint is denied. Since defendant has raised concerns about overly burdensome discovery, the court will consider any

proposals the parties advance regarding the timing and scope of discovery.  *See* Fed. R. Civ.

P. 26(c) & 26(f).

Dated:  April 21, 2021                                      /s/

                                                    Joan B. Gottschall
                                                    United States District Judge