**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED,<br><br>    Plaintiffs<br>    and Counterclaim Defendants,<br><br>    v.<br><br>EXELON GENERATION CO.,<br><br>    Defendant<br>    and Counterclaim Plaintiffs. | Civil Action No. 1:20-cv-03983<br><br>Honorable Joan B. Gottschall<br>Magistrate Judge Heather K. McShain<br><br>**STIPULATION AND ORDER REGARDING ELECTRONIC DISCOVERY** |

    Plaintiffs and Counterclaim Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited and Defendant and Counterclaim Plaintiff Exelon Generation Co. have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests of the parties. This Stipulation and [Proposed] Order (and any subsequent ones) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Stipulation and [Proposed] Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Stipulation may become necessary as more information becomes known to the parties.

    **1.    Production of ESI**

        **a.**    **TIFFs.** Documents not produced in native format should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be

1

named as its corresponding Bates number. Absent special circumstances or undue burden, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Document shall be processed and produced, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. Bates numbers, confidentiality designations, and redactions should be incorporated into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder.

**b.     System Files.** Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. NIST files should be removed before production.

**c.     Metadata Fields and Processing.** Absent special circumstances, each of the metadata and coding fields set forth below that can be extracted from a document shall be produced for that document, to the extent already in existence. To the extent that metadata does not exist, nothing in this document shall require any party to extract, capture, collect or produce such data. The parties are not obligated to populate manually any of the fields if such fields cannot be extracted automatically from a document using standard processing software, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Confidentiality Designation ("Confidential" under the Parties' Protective Order), (6) NativeLink (if applicable), and (7) TextLink, which may be

populated by the party or the party's vendor. Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

| Custodian | Individual from whom the produced document was collected |
|---|---|
| All Custodians | Individuals who had exact copies of the email message (Required if population was globally deduplicated) |
| BegBates | Beginning document number |
| EndBates | Ending document number |
| BegAttach | Beginning document number of family unit |
| EndAttach | Ending document number of family unit |
| Page Count | Total number of pages in the document |
| Attachment Count | Number of attachments |
| Author | Author field extracted from the metadata of the native file |
| Recipient | Persons who received the document if there is applicable metadata |
| FROM | Sender of the email message |
| TO | Recipient(s) of the email message |
| CC | Recipient(s) of "carbon copies" of the email message |
| BCC | Recipient(s) of "blind carbon copies" of the email message |
| Subject | Subject field extracted from the metadata of the native file |
| Date Sent | Date the email message was sent |
| Time Sent | Time the email message was sent |

| | |
|---|---|
| DateLastModified | Date document was last edited |
| TimeLastModified | Time document last edited |
| Source File Extension | File extension of document (.msg, .doc, .xls, etc.) |
| File Name | Name of original file |
| File Size | File size in kilobytes (MB, KB, GB) |
| Title | Any value populated in the "Title" field of the document properties |
| Redaction | Redaction status of a document |
| Hash Value | MD5 Hash Value, unique document identifier |
| NativeLink | Link to Native File |
| TextLink | Link to Text File |
| Creation Date and Time | Date and Time created for non-email document |

All date fields should be in the MM/DD/YYYY format and all time fields should be in HH:MM:SS.

**d.     Extracted Text Files.**  For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata.  The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.  File names should not contain any special characters, confidentiality designations or embedded spaces.  The text of native files should be extracted directly from the native file.  However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.  Also, if extracted text is not available in the native file, the

documents should be processed by an OCR tool prior to production to extract available text so that the record is searchable.

  e. **Database Load Files/Cross-Reference Files.**

    **i. Plaintiffs' Request** - Documents should be provided to EIG with Access Data Summation Pro-compatible image and data load files (*i.e.*,.OPT, .DAT, .CSV, *and* .DII files) using standard Summation delimiters.

    **ii. Defendant's Request –** Documents should be provided to Defendant with Group IV single-page TIFF (300 DPI) images with corresponding multi-page text with a load file in a Concordance standard load format (i.e., .OPT, .DAT) with standard Concordance delimiters.

  f. **Native Files.** Absent special circumstances, non-redacted Excel files, .CSV files and other similar spreadsheet files shall be produced in native format ("Native Files"). Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. For documents that require redactions, the Parties may apply the redactions directly on the native file itself. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and

applicable metadata fields as set forth in part c. above. If a Native File is used at a deposition or hearing in this Action, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image in order to facilitate tracking and authentication thereof.

g. **Requests for Other Native Files.** Other than as specifically set forth herein, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing in writing: (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in part c. above.

Documents that a party may request be produced in native format include, without limitation, emails, Microsoft office suite files, and other similar word processing files.

h. **Structured Data.** To the extent responding to a discovery request requires production of relevant and responsive ESI contained in a database, the producing party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or CSV format). To the extent

available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report. Unless good cause exists, the parties have no obligation to provide a supplemental report for records and information post-dating the extraction of the Structured Data Report.

**i.** **Color.** Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing in writing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests, unless such requests are unreasonably costly.

**j.** **Parent-Child Relationships.** Parent-child relationships (the association between e-mails and attachments) will be preserved to the extent possible and as it existed in the ordinary course of business. E-mail attachments will be consecutively produced with the parent e-mail record. For example, if a party produces an e-mail with its attachments, such attachments should be produced behind the e-mail in the order in which they were attached.

**k.** **Audio and Video Files**. Audio and video files, to the extent their contents can be determined to be responsive, will be produced in a reasonably usable form as may be agreed upon by the Parties alone with a slip-sheet TIFF placeholder image to the extent the file gets produced in native form.

l. **Confidentiality Designations**. If a receiving party reduces to hard copy form any Native Files or other ESI designated as Confidential, it shall mark the hard copy with the appropriate confidentiality designation.

2. **Production of Hard Copy Documents**

a. **Creation and production of electronic copy.** A party may produce a hard copy document by scanning it to create an electronic copy and producing such electronic copy in accordance with the requirements of Sections 1.a and 1.d. Absent special circumstances, such documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) Confidentiality Designation (under the Parties' Protective Order), and (4) TextLink. The receiving party should treat such document in accordance with Section 1.l.

b. **Folders.** If a folder with hard copy documents is produced, the label of that folder should be scanned and produced along with the responsive electronic copies of documents in the folder.

c. **Unitization of Documents.** In general, scanned, hard copy documents should be logically unitized. If the documents are not logically unitized, documents should be unitized based on physical boundaries (staples, clips, etc.).

3. **Bates Numbering**

Each TIFF image should be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or

embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

**4.     De-Duplication**

A party is required only to produce a single copy of a responsive document, and a producing party may, but is not required to, de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the document family level. However hard-copy documents shall not be eliminated as duplicates of responsive ESI.

**5.     Shipment/Encryption**

Electronic data productions may be shipped on CDs, DVDs or hard drives or transferred through File Transfer Protocol ("FTP"). The physical media label should contain the case name and number, confidentiality designation, production date, and Bates range being produced, or such information shall otherwise be provided in connection with an FTP transfer.

To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The encryption program used for production media should be one that is readily available and would not create delays accessing the encrypted data.

6. **Password Protected Files**.

The parties will make reasonable efforts to remove passwords or other security protection from ESI documents prior to production.

7. **Processing of Third-Party Documents**

A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall promptly produce any documents obtained pursuant to a non-party subpoena to the opposing party in the formats which were provided by the third party. The Issuing Party is under no obligation to incur any additional cost to re-format any document obtained from a third party prior to production.

8. **Objections Preserved**

Nothing in this ESI Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and/or ESI.

9. **Miscellaneous Provisions**

Except as to the formatting for production agreed to herein, all documents (electronic or otherwise) shall be produced as kept and maintained by the producing party in the ordinary course of business.

The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with these specifications. No party may seek relief from the Court concerning compliance with these specifications unless it has conferred with other affected parties.

Nothing in these specifications shall be interpreted to require disclosure of material protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents. All productions are subject to the Protective Order entered by the Court in this Action.

Nothing in these specifications shall preclude the parties from meeting and conferring regarding applicable search terms, date ranges, custodians, and other parameters or methods used to cull data for review and production. Nothing in these specifications shall preclude the parties from meeting and conferring on the use of technological solutions to assist in the review of documents, such as intelligent review or predictive coding.

Dated: July 20, 2021

SO ORDERED

_Heather K. McShain_
Magistrate Judge Heather K. McShain
United States District Court
Northern District of Illinois, Eastern Division

The parties to this Action hereby stipulate to the entry of this Order.

Respectfully submitted,

By: /s/ Stephen M. Ankrom

Robert L. Powley (admitted *pro hac vice*)
rlpowley@powleygibson.com
James M. Gibson (admitted *pro hac vice*)
jmgibson@powleygibson.com
Stephen M. Ankrom (admitted *pro hac vice*)
smankrom@powleygibson.com

POWLEY & GIBSON, P.C.
60 Hudson Street, Suite 2203
New York, New York 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085

and

Binal J. Patel
bpatel@bannerwitcoff.com
Katherine Laatsch Fink
kfink@bannerwitcoff.com

BANNER & WITCOFF, LTD.
71 South Wacker Drive
Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*Counsel for Plaintiffs and Counterclaim Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited*

By: /s/ Louis A. Klapp

Sondra A. Hemeryck
Rodney Perry
Louis A. Klapp
Rachel F. Sifuentes

RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison, Suite 2900
Chicago, Illinois 60602
Phone: (312) 471-8700
Fax: (312) 471-8701
shemeryck@rshc-law.com
rperry@rshc-law.com
lklapp@rshc-law.com
rsifuentes@rshc-law.com

*Attorneys for Defendant and Counterclaim Plaintiff Exelon Generation Co., LLC*