IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC, and ENERGY INTELLIGENCE GROUP (UK) LIMITED,<br><br>    Plaintiffs and Counterclaim-Defendants,<br>v.<br><br>CONSTELLATION ENERGY GENERATION, LLC,<br><br>    Defendant and Counterclaim-Plaintiff. | Civil Action No. 1:20–cv–03983<br>Civil Action No. 1:21–cv–05689<br><br>Honorable Joan B. Gottschall<br><br>Magistrate Heather K. McShain |

**CONSTELLATION ENERGY GENERATION, LLC'S
MOTION TO COMPEL PLAINTIFFS' RESPONSES TO CERTAIN DISCOVERY**

Constellation Energy Generation, LLC ("Constellation")[1] moves to compel Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited ("EIG") to provide certain discovery under Federal Rule of Civil Procedure 37 and Local Rule 37.2. EIG has failed to provide the following information: (1) EIG's damages allegedly caused by Constellation, (2) the proper means of calculating damages on subscription violations, (3) EIG's awareness of Constellation's alleged infringement, (4) EIG's access to tracking capabilities to monitor alleged infringement, (5) EIG's relevant financial documents, (6) EIG's policies for monitoring and initiating copyright actions, and (7) EIG's testimony and expert reports in related litigation.

**I. BACKGROUND**

EIG filed this action alleging copyright infringement by Constellation on July 8, 2020. (Compl. ¶ 1, Dkt. 1.) The complaint alleges that EIG began publishing the weekly newsletter *Nuclear Intelligence Weekly* ("*NIW*") in November 2011, and Constellation has subscribed to

---

[1] "Constellation was previously named Exelon Generation Company LLC, and so the discovery refers to "Exelon Generation" rather than "Constellation."

*NIW* since that time. (*Id*. ¶¶ 8, 20, 29.) According to EIG, the subscription agreements allowed two Constellation's employees to receive a copy of each *NIW* edition delivered by email, but the employees were not allowed to forward *NIW* to other Constellation employees. (*Id*. ¶¶ 29, 42.) EIG alleges that Constellation engaged in regular and systematic copying and forwarding of the *NIW* editions in violation of copyright law. (*Id.* ¶¶ 51–61.)

Constellation has denied that it engaged in such systematic forwarding and asserted that occasional instances of forwarding fell within the license that EIG granted to Constellation and that EIG never terminated. (*See* Ans. ¶¶ 37–39, Dkt. 96; Aff. Def. ¶¶ 6–7, Dkt. No. 96.) Constellation also asserted a statute of limitations defense because EIG did not sue until 2020, at least five years after EIG did or should have uncovered the allegedly infringing activity—in other words, two years too late based on the three-year statute of limitations. (*See* Aff. Def. ¶¶ 1–2, Dkt. No. 96.) Constellation timely served discovery directed at these claims and defenses. But EIG has not complied with its discovery obligations, and the parties have reached an impasse. *See* L.R. 37.2 Certification.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to obtain information "that is relevant to any party's claim or defense" and "proportional to the needs of the case." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). Proportionality depends, in part, on the "importance of the issues at stake, the amount in controversy, the parties' relative access to information, the importance of the discovery in resolving the issue, and whether the burden of expense of the proposed discovery outweighs its likely benefit." *Id.* When a party fails to meet its discovery obligations, the district court may grant a motion to compel responses and "may fashion a ruling appropriate for the circumstances of the case." *Hubbell Indus.*

*Controls, Inc. v. Electro Power Sys.*, No. 12-cv-8609, 2013 WL 5676916, at *3 (N.D. Ill. Oct. 17, 2013). "The burden rests upon the objecting party to show why a particular discovery request is improper. This burden is not satisfied by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Id.* (internal marks omitted).

**III.     ARGUMENT**

EIG has failed to meet its burden and improperly refused to provide the following discoverable information: (1) EIG's damages allegedly caused by Constellation, (2) the proper means of calculating damages on subscription violations, (3) EIG's awareness of Constellation's alleged infringement, (4) EIG's access to tracking capabilities to monitor alleged infringement, (5) EIG's relevant financial documents, (6) EIG's policies for monitoring and initiating copyright actions, and (7) EIG's testimony and expert reports in related litigation.

**A.     EIG should explain its claimed damages (First Interrogatory No. 2).**

Damages have paramount importance in nearly every litigation, so it is no surprise that the Federal Rules of Civil Procedure require a plaintiff—before it is asked to do so in discovery—to provide "a computation of each category of damages claimed" in its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). EIG failed to do so. (*See* Ex. 1 at 6–7.) After EIG did not meet its initial obligation, Constellation served an interrogatory on EIG's damages:

> For each alleged act of copyright infringement by Exelon Gen. Co., describe the type(s) (e.g., statutory damages, actual damages) and amount of damages sought for each act of alleged infringement and the factual and legal bases for your damages calculation.

(Ex. 2 at No. 2.)

EIG's interrogatory response, as amended, states that EIG presently seeks two sets of

3

damages—actual damages/profits and statutory damages—and that EIG would make its election sometime before final judgment:

> Plaintiffs respond that they may elect at any time before final judgment to recover (1) Plaintiffs' actual damages and any additional profits of the Defendant's attributable to the infringement, or (2) statutory damages.

(*Id.* at 4.)

For actual damages, EIG provided four hypothetical ways to calculate the amount, but it failed to identify which one was supposedly proper here, failed to calculate the sum in view of its infringement allegations, and failed to provide the factual and legal basis for such calculation. (*Id*.) For statutory damages, EIG cited a statutory range of such damages ("the minimum of $750 up to $150,000 for each work infringed") and several factors that should be considered in deciding the amount of statutory damages (". . . the copyright owner's lost revenues, which are measured by lost licensing and/or subscription fees due to the infringement; the difficulty of proving actual damages; . . ."), but again EIG failed to identify the applicable statutory-damages amount for each allegedly infringed work and failed to explain why such amount was appropriate in view of the factors. (*Id*. at 4–5.) For both categories of damages, EIG made no attempt to explain which category applies to which copyrighted work. Through the meet and confer process, EIG declined to supplement and confirmed it is standing on its objection that the interrogatory "is premature pending the completion of discovery as to the full extent of Defendant's [alleged] copying and distribution at issue in this litigation." (*Id.* at 3–4.)

The Court should overrule EIG's objection and compel a complete response based on all information *now* known to EIG. First, EIG's "premature" objection is improper. Under EIG's initial disclosure requirement, damages computations must be provided "at or within 14 days after the parties' Rule 26(f) conference"—which occurred in April 2020—"without awaiting a

4

discovery request." Thus, the federal rules recognize EIG's duty to disclose damages computations at the *beginning* of discovery—not the end—as EIG claims.

Second, EIG must answer with all available information *during* discovery: "Plaintiff doesn't get to decide when to respond to discovery requests at his leisure." *J&M Indus., Inc. v. Raven Indus., Inc.*, No. 16-2723-JTM-KGG, 2018 WL 1427952, at *3 (D. Kan. Mar. 22, 2018). For damages, "Plaintiffs should be able to make a good faith estimate of damages and methods of calculations based on the information available at this stage of the litigation, while reserving their right to amend their calculations." *Tovar Snow Prof'ls, Inc. v. ACE Am. Ins.*, No. 20-cv-01060, 2021 WL 4745376, at *6 (N.D. Ill. Oct. 12, 2021). And "[i]f estimates are made which might be subject to revision after [further discovery], as Plaintiffs contend, that is entirely permissible, but the requirements of Rule 26 cannot be avoided." *Id.*

Third, Constellation's ability to defend this case and develop its own defenses during discovery have been impeded without knowing the amount and bases for EIG's claimed damages, which after all is EIG's burden. By waiting until the close of discovery, EIG impermissibly seeks to shift its burden. Thus, the Court should compel EIG to fully answer Constellation's First Interrogatory No. 2 with a calculation of the actual and statutory damages sought and an explanation of the facts and law supporting those purported damages.

> **B.    EIG should produce documents relevant to its claimed damages (First RFP No. 20).**

EIG compounds its damages deficiencies by refusing to comply with Constellation's First RFP No. 20, which seeks documents related to EIG's copyright infringement claims against third parties "that contain a calculation or explanation of damages":

> All documents related to any assertion (including without limitation litigations, informal assertions by letter, and settlement discussions) of copyright infringement by you against a third party that contain a calculation or explanation of damages

5

> (either by you or by a third party), including without limitation initial disclosures, interrogatory responses, expert reports, deposition transcripts, hearing/trial transcripts, briefs, letters to the accused infringers, letters to mediators, or presentations.

(Ex. 3 at No. 20.) EIG objected, claiming that the request seeks irrelevant information:

> Plaintiffs object to this request on the ground that it calls for information that is neither relevant or proportional to the needs of the case, because any calculation or explanation of damages related to assertions of copyright infringement against unrelated third parties were based on the specific facts and circumstances of those instances which have no bearing or relevance to the damages in this case.

(*Id.* at 10–11.) As above, EIG has stood on its objection. (*See* Ex. 4 at 2.) EIG has also added that "any letters to mediators or settlement communications would have been made pursuant to Fed. R. Evid. 408 with the expectation that it would be treated as confidential." (*Id.*)

The Court should overrule EIG's objections and order EIG to produce responsive documents. First, damage calculations for third parties are relevant to damage calculations here, showing how EIG values its publications. *See Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 941 (N.D. Tex. 2017); *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004). EIG's position in other actions where it asserted loss of revenue from unlawful copying will bear on EIG's claim to damages here.

Second, EIG's assertion of burden is unsupported and unavailing. This boilerplate objection cannot block discovery of relevant documents and information. *Osada v. Experian Info. Sols.*, 290 F.R.D. 485, 494 (N.D. Ill. 2012) (rejecting "reflexive invocation of the same baseless, often abused litany that the requested discovery is . . . unduly burdensome").

Third, EIG's Rule 408 assertion was not raised in its objections and therefore waived. (*See* Ex. 3 at 10–11.) Regardless, it is misplaced. EIG's objection does not apply to the bulk of the request: initial disclosures, interrogatory responses, and expert reports are unrelated to

6

settlement. And "there is no *de jure* settlement privilege." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2020 WL 7865914, at *2 (N.D. Ill. Oct. 27, 2020). Finally, a protective order here governs confidentiality, and Constellation will comply with that order if EIG produces the material with a "Confidential" designation.

Consequently, the Court should compel EIG to produce documents responsive to Constellation's Second RFP No. 20.

### C. EIG should produce discoverable information relevant to EIG's knowledge of Constellation's alleged copyright infringement (First Interrogatory No. 3 and First RFP Nos. 6 and 7).

EIG impermissibly uses a privilege objection to hide *facts* related to its knowledge of Constellation's alleged infringement, as sought by Constellation's First Interrogatory No. 3 and RFP Nos. 6 and 7. As noted above, Constellation asserts a statute of limitation defense because EIG—which asserts infringement back to 2011—waited too long to sue in order to build up alleged damages. (*See* Aff. Def. ¶¶ 1–2, Dkt. No. 96.) Thus, the facts around when EIG discovered, or should have discovered, the allegedly infringing activity is relevant.

Interrogatory No. 3 seeks the facts around EIG's first awareness of actual or potential copyright infringement by Constellation:

> Describe all facts and circumstances around your first awareness that [Constellation] did, or may have, allegedly infringed the copyright of each Asserted NIW Work, including without limitation the date of such awareness, how you became aware, and the persons involved.

(Ex. 2 at No. 3.) Likewise, RFP Nos. 6 and 7 seek documents related to EIG's awareness that Constellation may have undertaken some act that amounted to copyright infringement:

> All documents relating to any analysis or evaluation of whether [Constellation] may have, or may not have, committed copyright infringement.

(Ex. 3 at No. 6.)

7

> All documents and things concerning reproduction (whether print or electronic), electronic forwarding, storage, or distribution of any NIW Work by [Constellation].

(*Id.* at No. 7.) For the interrogatory and the document requests, EIG asserts objections based on attorney-client privilege and attorney work product, but EIG has said that it would provide non-privileged information and documents. (Ex. 2 at 5–6; Ex. 3 at 4–5.)[2]

EIG's answer is incomplete, and it cannot use privilege to hide non-privileged facts. According to EIG's current answer—after asserting its privilege objection—EIG states that two employees examined some data from EIG's email vendor (which delivers copies of the copyrighted EIG publications to Constellation's employees' email accounts) on or around March 28, 2019, and they concluded that Constellation was allegedly infringing by "distributing copies" of the publications. (Ex. 2 at 6.) This answer has glaring omissions: What led these employees to review the data in March 2019, and what was the history of their suspicions or knowledge about Constellation's supposedly impermissible activity? EIG has produced no information that answers these questions. Of course, if that activity does not involve lawyers, it must be disclosed. And even if lawyers were involved, the underlying facts—although not the legal advice—must be disclosed. *Evovle Biosystems, Inc. v. Abbott Labs., Inc.*, No. 19 cv 5859, 2020 WL 7398784, at *2 (N.D. Ill. Dec. 17, 2020) ("Facts do not become privileged just because they are communicated to or by a lawyer") (quotations and internal brackets omitted).

The same applies to the document requests. During the meet and confer process, EIG stated that it produced the email-data referenced in the interrogatory answer, which is true. But EIG produced no other documents: EIG produced no communications prompting the March

---

[2] As for RFP No. 7, EIG also objects to the extent the request asks EIG to produce Constellation's documents back to Constellation. Constellation seeks only documents in EIG's position, custody, and control, and does not seek re-production of documents.

2019 analysis, no document memorializing how the EIG employees reached the infringement conclusion from that data, and no other documents responsive to the requests. If such documents include allegedly privileged material, EIG may redact. But EIG must disclose the dates, individuals involved, and all *facts* related to EIG's knowledge of allegedly infringing activities.

Finally, EIG has produced no privilege log for any withheld material. This is improper, and it is needed for Constellation and the Court to assess the privilege objection. *Caracci v. Am. Honda Motor Co., Inc.*, No. 19-cv-2796, 2021 WL 4459468, at *5 (N.D. Ill. Sept. 29, 2021).

EIG therefore should be compelled to produce responsive information and documents in response to Constellation's First Interrogatory No. 3 and RFP Nos. 6 and 7.

>    **D.    EIG should produce discoverable information relevant to its capabilities to track emails (First RFP Nos. 14 and 15).**

EIG likewise refuses to produce documents relevant to its ability to monitor, including monitoring of third parties. This discoverable information is sought by Constellation's First RFP Nos. 14 and 15:

> All documents related to your tracking, monitoring, investigating, or evaluating usage of any publications distributed by you or of the emails through which you distribute your publications.

(Ex. 3 at No. 14.)

> All documents related to your past or present ability, including abilities acquired via third parties, to track or otherwise monitor, investigate, and/or evaluate usage of any publication distributed by you or the emails through which you distribute your publications.

(*Id.* at No. 15.) Citing relevance and overbreadth, EIG states that it will only produce documents related to its monitoring of *Constellation's* usage of *NIW*, and it will withhold documents related to its monitoring of *third parties'* usage of *any EIG* emails and publications. (*Id.*)

The Court should overrule EIG's objections and order EIG to produce the documents.

The information is plainly relevant to Constellation's statute of limitations defense as described above. And even if EIG did not apply monitoring capabilities against Constellation until 2019, the question of whether it could and *should have* done so earlier is material to this case. "[T]he copyright statute of limitations starts to run when the plaintiff learns, or *should as a reasonable person have learned*, that the defendant was violating his rights." *See Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (emphasis added).

EIG's complaint admits that it began using a tracking vendor's services no later than 2015 and alleges infringing activity began at least as early as November 2011. (Ex. 2 at 3, 7.) Documents related to EIG's actual or potential use of the vendor's data to monitor potential infringement—even if those documents concern third parties—is relevant to whether EIG should have uncovered Constellation's accused conduct sooner. Similarly, EIG has been a serial litigant, having sued more than 70 of its customers since 2005, and presumably, had a basis for doing so—that is, some reason to believe customers were infringing—and that information is directly relevant to the "should have known" prong of the statute of limitations inquiry.

EIG's argument that the requests are not "proportional" is unavailing. As noted above, these requests do not seek documents on some ancillary issue, but instead seek documents that will help prove Constellation's statute of limitation defense and dispose of the bulk of this case (i.e., all acts of alleged infringement occurring more than three years before the filing of the suit). EIG is free to drop all infringement accusations predating three years before the complaint was filed if EIG wants to avoid discovery. But as long as it maintains nearly a decade of accusations, EIG cannot complain when Constellation seeks legitimate discovery on whether EIG delayed filing suit. Thus, EIG should be compelled to produce documents relating to its capabilities to track emails for all publications in response to Constellation's First RFP Nos. 14 and 15.

E.     **EIG should produce its relevant financial documents (Second RFP Nos. 14, 15, and 18).**

EIG is withholding its relevant financial documents—showing the portion of its profits generated from suing its customers for alleged infringement relative to its profits from subscriptions—in response to Constellation's Second RFP Nos. 14, 15, and 18:

> Documents sufficient to show the quantity sold, gross revenue, and profits from sales of, subscriptions to, and licenses to NIW.

(Ex. 5 at No. 14.)

> Documents sufficient to show the revenue achieved and costs incurred from enforcing copyright infringement claims in NIW.

(*Id.* at No. 15.)

> Documents sufficient to show your revenues, costs, and profits for each year since 2011.

(*Id.* at 18.)  EIG asserts that it would not produce the documents because they are "irrelevant to the claims, defenses, or damages in this case."  (Ex. 5 at 8–10.)  Again, this boilerplate objection cannot block discovery of relevant documents and information.  *Osada*, 290 F.R.D. at 494.

Contrary to EIG's objection, this financial material is highly relevant.  *See Fields v. Gen. Motor Corp.*, No. 94-C-4066, 1996 WL 14040, at *2, 5 (N.D. Ill. Jan. 14, 1996) (holding financial documents are relevant to an affirmative defense).  EIG admittedly entraps its customers into alleging infringing activity because it is more lucrative to build up statutory damages than to generate revenue through legitimate subscriptions.  That financial information also goes to EIG's bias and motive.  *See United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant . . . ."); *United States v. Jamison*, 635 F.3d 962, 965 (7th Cir. 2011) ("Evidence revealing a witness's bias or motive to lie is relevant . . . .").

Therefore, EIG should be compelled to produce financial documents responsive to

11

Constellation's Second RFP Nos. 14, 15, and 18.

  **F. EIG should produce discoverable information relevant to its policies for copyright infringement (First RFP No. 25).**

EIG is withholding documents showing its policies for copyright infringement in response to Constellation's First RFP No. 25:

> All documents related to your policies for monitoring potential copyright infringement, notifying customers of alleged copyright infringement, and/or initiating litigation for alleged copyright infringement.

(Ex. 3 at No. 25.) Although EIG asserts several objections, it ultimately agreed to "produce non-privileged documents responsive to this request located after a reasonable search." (*Id.* at 12–13.)

During the meet and confer process, EIG asserted that it complied with its obligations, having produced one document stamped EIG000868, which addresses financial incentives to EIG employees who identify customer infringements. (*See* Ex. 4 at 3; Ex. 6 at EIG000868.) While this document is responsive, the request calls for all responsive documents, not just one.

There is no question that more responsive documents exist. As an example, documents produced in *EIG v. Kayne Anderson*, No. 4:14-cv-01903 (S.D. Tex. July 4, 2018), now unsealed, are directly responsive to this request. In *Kayne Anderson*, EIG produced a 2005 memorandum titled "Energy Intelligence Profitability Improvement Plan," which outlines EIG's "aggressive" copyright enforcement against customers. (Ex. 7 at EIGvKayne037705-06.) Similarly, an EIG employee email explains EIG's "stated goal is to aggressively pursue the rest of our large clients with lawsuits, and in this appears to have support of board and ownership," as well as EIG's "entrapment efforts." (Ex. 8 at KIGvKayne038025.)

EIG has not produced the documents cited in *Kayne Anderson*—or any other documents—except EIG000868 referenced above. EIG has no basis to deny Constellation discovery, and the Court should order production of all documents responsive to RFP No. 25.

### G. EIG should produce its own testimony with exhibits and expert reports from its other copyright litigation (Third RFP Nos. 1–4).

EIG finally refuses to produce *its own* testimony and expert reports from other copyright litigation in response to Constellation's Third RFP Nos. 1 through 4:

> All transcripts of any deposition and trial testimony, including the exhibits associated with each transcript, given by you, your employees, designees, representatives, or experts in EIG Copyright Litigation.

(Ex. 9 at No. 1.)

> All transcripts of any deposition and trial testimony, including the exhibits associated with each transcript, given in EIG Copyright Litigation (including without limitation by third parties such as Twilio or SendGrid) related to (i) the ability to track (or otherwise collect data on) the activity of email recipients or (ii) tracking (or otherwise collecting data on) the activity of email recipients.

(*Id.* at No. 2.)

> All expert reports (and disclosures of expert testimony for experts not required to provide a report) disclosed by you in EIG Copyright Litigation.

(*Id.* at No. 3.)

> All expert reports (and disclosures of expert testimony for experts not required to provide a report) disclosed in EIG Copyright Litigation related to (i) the ability to track (or otherwise collect data on) the activity of email recipients or (ii) tracking (or otherwise collecting data on) the activity of email recipients..

(*Id.* at No. 4.)

EIG mistakenly objects that only *NIW* emails and publications are relevant. (*Id.*) But EIG's allegations are not so limited. (Compl., Dkt. 1 ¶¶ 8–18 (broadly alleging about its other publications; "Plaintiffs have developed an exemplary reputation . . . of all their publications"). Nor are EIG's knowledge, conduct, and practices related to its copyright litigation limited to *NIW*. (Ex. 8 at KIGvKayne038025. ("It's clear from the board meeting that Mark's stated goal is to aggressively pursue the rest of our large clients with lawsuits, and in this appears to have

13

support of board and ownership"; this includes "entrapment efforts led by Mark").

EIG also improperly objects that the information is with EIG's lawyers, and not in EIG's possession, custody, or control. Not true. "Documents in the possession of a party's attorney . . . may be considered to be within the control of the party for purposes of a Rule 34 production request." *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992); *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros.*, 233 F.R.D. 209, 212 (D.D.C. 2006) (same). Indeed, EIG uses the same law firm across its copyright litigation, and has already produced written discovery responses from its other copyright litigation. EIG, through the same counsel here, has even produced this discovery in other litigation:

> MR. MUELLER: Mr. Powley, can we get the final version of the deposition transcript produced?
> **MR. POWLEY: Sure.**
> MR. MUELLER: Do you know what matter that was from?
> **MR. POWLEY: United Steel. Absolutely.**

(Ex. 10, Mark Wellman Dep. 6:3–10.)

The reason is simple: defendants sued in copyright litigation by EIG are entitled to this highly relevant information. *See Powerlift, Inc. v. Mark Indus., Inc.*, No. 86 C 2055, 1987 WL 12177, at *1 (N.D. Ill. June 9, 1987) ("Before the court in this opinion is the question whether [a party] can be compelled to disclose his depositions in other lawsuits. The answer to that is affirmative."); *Nye v. Hartford Acc. And Indem. Co.*, No. 12-5028-JLV, 2013 WL 3107492, at *15 (D.S.D. June 18, 2013) (same); *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012) (same); *Abel v. Mylan, Inc.*, No. 09-cv-0650-CVE-PJC, 2010 WL 3910141, at *3 (N.D. Okla. Oct. 4, 2010) (same).

Constellation has a right to investigate EIG's knowledge, conduct, and practices across its copyright litigation for its claims here, as well as Constellation's statute of limitations and other

14

defenses. (Aff. Def. ¶¶ 6–7, Dkt. 96.) This discovery also provides critical impeachment material, and the jury is entitled to know the bias, motive, and consistency of EIG's witnesses. EIG witnesses have testified (in other litigation) that EIG offers a $5,000 bonus to employees who create opportunities for copyright litigation, with an additional $5,000 if the lawsuit leads to a monetary recovery for EIG. *Kayne Anderson*, Dkt. 171-16 at 77:10-16, Dkt. 171-12 at 77:1-78:14), Dkt. 171-20 at 108:19-109:21. EIG has even paid an employee more than $1 million based solely on his management of EIG's copyright litigation. *Id.* at Dkt. 171-12, at 246:6-18.

This information will also make discovery here far more efficient. Constellation will better understand each witness's knowledge and involvement in EIG's copyright enforcement, as well as help inform Constellation which witnesses it should depose. In fact, the *Manual for Complex Litigation* explains it is "economical for the judges to afford parties in the present litigation access to depositions previously taken in other litigation." *Manual for Complex Litigation* § 11.455 (4th ed. 2004).

Finally, as noted above, EIG can produce the requested transcripts and expert reports with minimal effort: they are easily identifiable, readily available, and inexpensive to produce. EIG has never claimed that the number of transcripts and expert reports is voluminous, and especially since EIG uses the same counsel across its copyright litigation, EIG cannot credibly claim that producing those transcripts and expert reports will impose an undue burden.

Thus, the Court should order EIG to produce its testimony with exhibits and expert reports from its other copyright litigation in response to Constellation's Third RFP Nos. 1–4.

## IV.   CONCLUSION

For these reasons, Constellation requests that the Court grant its motion and enter any other just relief.

Dated: April 18, 2022

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson
Sondra A. Hemeryck
Louis A. Klapp
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison, Suite 2900
Chicago, Illinois 60602
Phone: (312) 471-8700
Fax: (312) 471-8701
bwatson@rshc-law.com
shemeryck@rshc-law.com
lklapp@rshc-law.com

*Attorneys for Defendant and Counterclaim Plaintiff Constellation Energy Generation, LLC*

**Statement of Counsel Pursuant to Local Rule 37.2**

Constellation's counsel certify that they have in good faith conferred with EIG's counsel to resolve the preceding discovery disputes. Counsel met and conferred by telephone on February 10, 2022, and most recently on April 12, 2022, and were unable to resolve these issues. Constellation's counsel Louis A. Klapp attended the meet and confer on behalf of Constellation. On EIG's behalf, EIG's counsel Stephen M. Ankrom attended the meet and confer. The parties have met and conferred through email and letter communications, including on February 24, 2022; March 18, 2022; and March 25, 2022.

Dated: April 18, 2022

Respectfully submitted,

/s/ Brian O. Watson
Brian O. Watson
Sondra A. Hemeryck
Louis A. Klapp
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison, Suite 2900
Chicago, Illinois 60602
Phone: (312) 471-8700
Fax: (312) 471-8701
bwatson@rshc-law.com
shemeryck@rshc-law.com
lklapp@rshc-law.com

*Attorneys for Defendant and Counterclaim Plaintiff Constellation Energy Generation, LLC*

4869-8969-0897, v. 9