# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED,<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>          v.<br><br>CONSTELLATION ENERGY GENERATION, LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Civil Action No. 1:20-cv-03983<br><br>Hon. Joan B. Gottschall<br>Magistrate Judge Heather K. McShain |

**PLAINTIFFS' FIRST AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT CONSTELLATION ENERGY GENERATION, LLC'S FIRST INTERROGATORIES TO ENERGY INTELLIGENCE GROUP, INC. AND ENERGY INTELLIGENCE GROUP (UK) LIMITED**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs and Counterclaim Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG" or "Plaintiffs"), by and through their undersigned attorneys, hereby serve their First Amended Responses and Objections to Defendant and Counterclaim Plaintiff Constellation Energy Generation, LLC's ("Constellation" or "Defendant") First Set of Interrogatories ("Interrogatories") as follows.

    **I.    GENERAL RESPONSES**

The following general responses are incorporated, unless otherwise noted, into each and every one of Plaintiffs' responses to the Interrogatories:

A. The specific responses set forth below are for the purposes of discovery only, and Plaintiffs neither waive nor intend to waive, but expressly reserve, any and all objections they may have to the relevance, competence, materiality, admission, admissibility or use at trial of any information, documents or writings produced, identified or referred to herein, or to the introduction of any evidence at trial relating to the subjects covered by such responses.

B. Plaintiffs expressly reserve their right to rely, at any time including trial, upon subsequently discovered information or information omitted from the specific responses set forth below as a result of mistake, oversight or inadvertence.

C. The specific responses set forth below are based upon Plaintiffs' interpretation of the language used in the Interrogatories, and Plaintiffs reserve their rights to amend or supplement their responses in the event Defendant asserts an interpretation that differs from Plaintiffs' interpretation.

D. Plaintiffs provide information responsive to the Interrogatories that Plaintiffs have in their possession, custody or control as of the date of these Responses. Plaintiffs will continue to provide responsive information as such is discovered, if any. Plaintiffs' failure to object to a particular Interrogatory or willingness to provide responsive information pursuant to an Interrogatory is not, and shall not be construed as, an admission of the relevance, or admissibility into evidence, of any such information, nor does it constitute a representation that any such information in fact exists.

E. Because Plaintiffs may not have discovered all the information that is possibly within the scope of the Interrogatories, Plaintiffs expressly reserve their rights to amend or to supplement these responses and objections with any additional information that emerges through discovery or otherwise.

F.  Upon request by Defendant, Plaintiffs are willing to meet and confer regarding their responses to any of the Interrogatories herein.

G.  All references to Exelon Generation Company are understood to refer to Constellation Energy Generation, LLC to reflect Defendant's new name.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1. For each alleged act of copyright infringement by Exelon Gen. Co., identify the copyright registration number and Asserted NIW Work that was allegedly infringed and describe the act that allegedly constituted infringement, including the date of such act.**

**Response**: Plaintiffs object to this Interrogatory on the ground that it is premature because the information is in the possession of defendant. As such, Plaintiffs reserve their right to amend and supplement their Response to this Interrogatory as further information concerning the extent of Defendant's infringement is revealed in discovery. However, upon information and belief, Plaintiffs believe that Exelon infringed the registrations listed in paragraph 20 of the Complaint.

Without waiver of the foregoing objections, Plaintiffs refer Defendant to Appendix A, attached hereto. Appendix A is based on Defendant's documents that it has produced to date. Appendix A lists the NIW works that Defendant has infringed during the time period of November 1, 2011 through July 8, 2020, based solely on documents Defendant has produced to date, and identifies by Bates number the documents that show infringement of NIW.

**Interrogatory No. 2. For each alleged act of copyright infringement by Exelon Gen. Co., describe the type(s) (e.g., statutory damages, actual damages) and amount of damages sought for each act of alleged infringement and the factual and legal bases for your damages calculation.**

**Response:** Plaintiffs object to this Interrogatory on the basis that it is premature pending the completion of discovery as to the full extent of Defendant's copying and

3

distribution at issue in this litigation. As such, Plaintiffs reserve their right to amend and supplement their Response to this Interrogatory as further information concerning the extent of Defendant's infringement is revealed in discovery.

Without waiving the foregoing objections, Plaintiffs respond that they may elect at any time before final judgment to recover (1) Plaintiffs' actual damages and any additional profits of the Defendant's attributable to the infringement, or (2) statutory damages.

As a measure of actual damages, Plaintiffs' lost licensing fees and/or subscription fees can be calculated in the following ways: (1) *Nuclear Intelligence Weekly's* current pay-per-article rate of $24.00 for a copy of a single article, multiplied by the total number of articles that were infringed by Defendant, multiplied by the total number of copies of each article made by Defendant; (2) *Nuclear Intelligence Weekly's* current pay-per-publication rate of $395.00 for a single copy of a single issue, multiplied by the total number of issues of *Nuclear Intelligence Weekly* that were infringed by Defendant, multiplied by the total number of copies of each issue made by Defendant; (3) Plaintiffs' current annual single publication global enterprise license rate of $200,000, multiplied by the number of years that Defendant infringed *Nuclear Intelligence Weekly*; and/or (4) for each annual subscription period in which Defendant infringed *Nuclear Intelligence Weekly*, the cost of *Nuclear Intelligence Weekly*'s annual subscription rate at that time for a single copy of *Nuclear Intelligence Weekly* for that annual period multiplied by the number of subscriptions needed to account for Defendant's infringement during that annual subscription period. Notwithstanding the foregoing, at the time, Plaintiffs are not certain as to the most accurate method to calculated the actual and/or statutory damages in this matter until further discovery regarding Defendant's copying is made available.

Statutory damages under the Copyright Act are based on the number of infringed works

multiplied by the applicable statutory award for each infringed work. The range of statutory damages can increase from the minimum of $750 up to $150,000 for each work infringed if Defendant's infringement of *Nuclear Intelligence Weekly* is found to be willful under Section 504(c) of the Copyright Act. Plaintiffs note that the final determination as to the applicable statutory award for each infringed work will be made by the finder of fact, not by Plaintiffs. In determining the amount of statutory damages awarded for each infringed work, the finder of fact may consider a number of factors, including but not limited to: the defendant acting with reckless disregard for, or willful blindness to, the copyright holder's rights; the benefits obtained by the infringer from its infringement; the copyright owner's lost revenues, which are measured by lost licensing and/or subscription fees due to the infringement; the difficulty of proving actual damages; the circumstances of the infringement; and deterrence. *See* 17 U.S.C. § 504(c)(2); *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 269 (5th Cir. 2020). Statutory damages "are intended not only to compensate copyright owners but also to deter copyright infringers." *Id.* at 273.

In addition, Plaintiffs further respond that they will seek to recover their costs and attorneys' fees in this case pursuant to 17 U.S.C. § 505.

**Interrogatory No. 3. Describe all facts and circumstances around your first awareness that Exelon Gen. Co. did, or may have, allegedly infringed the copyright of each Asserted NIW Work, including without limitation the date of such awareness, how you became aware, and the persons involved.**

**Response:** Plaintiffs object to this Interrogatory on the ground that the term "awareness" is vague, ambiguous, subject to speculation and subjective judgment as to its meaning, and calls for a legal conclusion. Plaintiffs object to this Interrogatory because it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or immunity.

5

Without waiver of the foregoing objections, Plaintiffs respond that they learned of Defendant's infringement of *Nuclear Intelligence Weekly* on or about March 28, 2019 by examining data provided by Plaintiffs' email delivery service SendGrid. Plaintiffs' employees David Babski and John Hitchcock reviewed the data including examining the number of times delivery emails were opened, when those openings occurred, the number of devices involved in the email openings, the IP addresses of the devices opening the emails, and the physical location of the devices (based on IP address data), among other things. From Plaintiffs' review of the aforementioned data, Plaintiffs believed Defendant was distributing copies of NIW.

**Interrogatory No. 4.** Describe all facts and circumstances around the analysis and conclusions discussed in Paragraphs 35–38 of the Complaint. Your answer should include at least the following information: (i) the dates when such analysis occurred, including the dates when "data reflecting Defendant's activity on the servers of the third-party email delivery service (the 'Delivery Service') that delivers NIW to Defendant" was requested from the Delivery Service, when it was delivered, when it was examined, and when conclusions were reached; (ii) the entities and natural persons involved in requesting, collecting, delivering, examining, and reaching conclusions from such data; (iii) how the analysis was performed and the conclusions were reached.

**Response:** Plaintiffs object to this Interrogatory because it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or immunity. Plaintiffs object to this Interrogatory on the ground that it is overly broad, unduly burdensome and not proportional to the needs of the case because it calls for a lengthy narrative response, and any non-privileged information sought can be obtained by more practical means by deposition of a corporate representative.

Without waiving the foregoing objections, Plaintiffs refer Defendant to Plaintiffs' response to Interrogatory No. 3.

**Interrogatory No. 5.** For each email delivery service, software, or vendor that delivered NIW to Exelon Gen. Co. (collectively, "email delivery services") on or after November 1, 2011, identify the time period in which such email delivery service delivered

**NIW to Exelon Gen. Co. and describe its ability within or after that time period to collect or analyze data regarding the number of times an email sent to Exelon Gen. Co. was opened, the number of unique devices on which such email was opened, or alleged copying of NIW.**

**Response**: Plaintiffs object to this Interrogatory to the extent that it seeks information that is at least as readily available to Defendant regarding services delivering email to Defendant. Plaintiffs further object to this Request as it calls for information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or immunity.

Without waiving the foregoing objection, and only to the extent Plaintiffs understood the "data" provided by a delivery service, if any, Plaintiffs respond that, from on or after November 1, 2011 to June 2015, American Technology Services, LLC ("ATS") was utilized by Plaintiffs to deliver *Nuclear Intelligence Weekly* to Defendant. To the best of Plaintiffs knowledge, ATS did not have the capability to collect or analyze any tracking data and did not provide such data to EIG.

SendGrid was the email delivery service utilized by Plaintiffs to deliver *Nuclear Intelligence Weekly* to Defendant commencing on or about June 2015 through to the present. SendGrid's services do not detect copying of PDF attachments, and SendGrid does not market its services as a copyright enforcement tool. As such, SendGrid's data does not directly show whether a PDF attachment to an email, such as *Nuclear Intelligence Weekly*, was opened, copied, or infringed.

In addition, the amount of information SendGrid made available to EIG changed over time. From on or about June 2015 to mid-2018, SendGrid's logs provided generic information when an email was "processed" by SendGrid, "delivered" to the recipient or when delivery was "deferred" for some reason, and when an email was "opened." *See* EIG005498.

7

EIG gained access to the newly available "open tracking" data on or about July 20, 2018, as a result of SendGrid upgrading its systems and services. *See* EIG005498. This additional data now included information about all the devices opening the subscription email and the internet protocol address ("IP address") of the devices opening the email. This additional information, available on or about July 20, 2018 for the first time, provided EIG with information that multiple devices were opening the emails delivering *Nuclear Intelligence Weekly*. The exact data SendGrid provided EIG before and after July, 2018 has been produced under Bates Nos. EIG005498.

Dated: March 14, 2022                    By: /s/ Stephen M. Ankrom
                   Robert L. Powley (Attorney-In-Charge)
                   rlpowley@powleygibson.com
                   James M. Gibson
                   jmgibson@powleygibson.com
                   Stephen M. Ankrom
                   smankrom@powleygibson.com

                   POWLEY & GIBSON, P.C.
                   60 Hudson Street, Suite 2203
                   New York, NY 10013
                   Telephone: (212) 226-5054
                   Facsimile: (212) 226-5085

                   and

                   Binal J. Patel
                   bpatel@bannerwitcoff.com
                   Katherine Laatsch Fink
                   kfink@bannerwitcoff.com

                   BANNER & WITCOFF, LTD.
                   71 South Wacker Drive
                   Suite 3600
                   Chicago, IL 60606
                   Telephone: (312) 463-5000
                   Facsimile: (312) 463-5001

## CERTIFICATE OF SERVICE

      On behalf of Plaintiffs Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited, I hereby certify that a true and correct Copy of PLAINTIFFS' FIRST AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT CONSTELLATION ENERGY GENERATION, LLC's FIRST INTERROGATORIES TO ENERGY INTELLIGENCE GROUP, INC. AND ENERGY INTELLIGENCE GROUP (UK) LIMITED was served was served via email upon counsel of record for Defendant on this 14th day of March, addressed as follows:

      Sondra A. Hemeryck
      Rodney Perry
      Louis A. Klapp
      Rachel F. Sifuentes
      RILEY SAFER HOLMES & CANCILA LLP
      70 W. Madison, Suite 2900
      Chicago, Illinois 60602
      shemeryck@rshc-law.com
      rperry@rshc-law.com
      lklapp@rshc-law.com
      rsifuentes@rshc-law.com

      /s/ Stephen M. Ankrom
          Stephen M. Ankrom