**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED, <br><br>        Plaintiffs and <br>        Counterclaim Defendants, <br><br>                v. <br><br> CONSTELLATION ENERGY GENERATION, LLC., <br><br>        Defendant and <br>        Counterclaim Plaintiff. | Civil Action No. 1:20-cv-03983 <br><br> Hon. Joan B. Gottschall <br> Magistrate Judge Heather K. McShain |

## OPPOSITION OF PLAINTIFFS TO DEFENDANT'S MOTION TO COMPEL

Plaintiffs and Counterclaim-Defendants Energy Intelligence Group, Inc. and Energy

Intelligence Group (UK) Limited (collectively "EIG") submit this opposition to the motion

brought by Defendant and Counterclaim-Plaintiff Constellation Energy Generation, LLC

("Constellation") under Rule 37 of the Federal Rules of Civil Procedure to compel EIG to

provide further discovery responses and/or documents with respect to seven of Constellation's

fifty-six requests for production and five interrogatories namely: (1) EIG's damages allegedly

caused by Constellation; (2) the proper means of calculating damages on subscription violations;

(3) EIG's awareness of Constellation's alleged infringement; (4) EIG's access to tracking

capabilities to monitor alleged infringement; (5) EIG's relevant financial documents; (6) EIG's

policies for monitoring and initiating copyright actions; and (7) EIG's testimony and expert

reports in related litigation. Several of these disputes have been resolved or will be rendered

moot as a result of the production prior to Defendant's motion and subsequent production of

additional documents by EIG.  The parties also held a further meet and confer on certain of the

topics raised by Constellation's motion to compel on April 27, 2022 but the parties were unable

to resolve their differences.  However, Constellation has refused to withdraw any of its current

motion.

## I.     BACKGROUND

EIG, and its predecessors-in-interest, have been engaged in publishing newsletters and

other publications for the highly-specialized global energy industry for nearly seventy (70) years.

In particular, EIG and its predecessors-in-interest have published the weekly newsletter *Nuclear*

*Intelligence Weekly* ("NIW") since 2011. D.E. 1 at ¶ 8.  EIG maintains an experienced and

knowledgeable editorial staff of approximately sixty (60) reporters, editors, and analysts at seven

(7) editorial bureaus located around the world who provide original content reporting and

industry analysis for the sixteen (16) publications put out by EIG, including NIW.  *Id*., ¶¶12-13.

None of EIG's publications feature or have any advertisements or sponsors in order to ensure

journalistic integrity and objective reporting. EIG is, therefore, dependent on paid subscriptions

to sustain the viability of its publications. *Id*. at ¶11.  Constellation was one of EIG's subscribers

to the NIW publication. *Id.* at ¶¶ 29 – 34.

From at least as early as November 2011 through to November 2020, Constellation

maintained a subscription for two of its employees to each receive a single-copy of NIW and the

articles therein by email delivery. *Id*. at ¶29.  The copyright in every single issue of NIW

provided to Constellation was properly registered with the U.S. Copyright Office and featured

prominent copyright notices and warnings, both on the publication itself and the delivery email

as well as in the parties' subscription agreement. *Id*. at ¶¶19-28.  Despite ample notice of EIG's

copyrights and in violation of Constellation's own corporate policy concerning the proper

handling of third party copyrighted material, discovery has revealed that Constellation made

copies of NIW by forwarding NIW via email to other employees of Constellation far beyond the two copies allowed under the subscription. Constellation also saved issues of NIW to an internal shared drive to which at least 50 employees of Constellation had access.

Regrettably, large companies like Constellation, who have the financial resources to pay for additional subscriptions, instead deliberately decide to violate the copyrights of EIG as well as their own corporate policies against copyright infringement. The infringement is often only revealed as a result of litigation as the evidence of infringement is concealed behind a subscriber's corporate firewall. Inevitably, when infringers like Constellation are caught, they do not seek to resolve the issue of their intellectual property theft. Rather they resort to inflammatory rhetoric seeking to smear an established, reputable publisher by complaining that EIG has the audacity to enforce its federally-registered copyrights as allowed under the Copyright Act. Efforts to blame the victim of serial copyright infringement that took place for nearly a decade should not be countenanced by this Court.

## II.      ARGUMENT

EIG has provided fulsome responses to Constellation's onerous discovery requests and has, or agreed to produce, voluminous documents in response to Constellation's discovery requests at issue. Despite these efforts, including several meet and confers, Constellation nevertheless resorts to motion practice. An analysis of what Constellation has requested in discovery and what EIG has already provided as well as what the law requires demonstrates that Constellation's discovery requests, to the extent they are permissible, have been properly responded to and there are no grounds for a motion to compel.

### A.      EIG Has Elected To Seek Statutory Damages, Which the Jury Decides

Constellation claims that EIG has failed to respond fully to Constellation's First Interrogatory No. 2. That Interrogatory asks:

3

> **Interrogatory No. 1**: *For each alleged act of copyright infringement by Exelon Gen. Co., describe the type(s) (e.g., statutory damages, actual damages) and amount of damages sought for each act of alleged infringement and the factual and legal bases for your damages calculation.*

D.E. 98-2 at pp. 2-3. The issue of damages has been debated in several meet and confers between counsel. Constellation has neglected to inform the Court that, on March 25, 2022, three weeks <u>before</u> Constellation filed its motion, EIG's counsel notified Constellation that EIG had elected to pursue statutory damages against Constellation in the action, due to the willful nature of Constellation's infringement and the difficulties that EIG would face proving actual damages because of the incomplete nature of Constellation's document production and/or document retention practices. Ex. A; 17 U.S.C. § 504(c)(1); *UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 843 (S.D. Ill. 2006); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (the copyright plaintiff can elect, at any time before final judgment, to pursue either actual damages and the infringer's profits or statutory damages). Thus the "type" of damages sought by EIG is statutory damages as provided in the Copyright Act and has been answered by EIG. Ex. A.

Turning to the amount of damages sought, statutory damages for each act of infringement may range from $750 for each infringed work to $30,000 per work. 17 U.S.C. § 504(c)(1). If the infringement is found to be willful, the maximum allowable statutory damages increases to $150,000 per work. 17 U.S.C. § 504(c)(2). In awarding a specific dollar amount in statutory damages for each act of infringement, the jury may consider various factors including the expenses saved and the profits reaped by the defendant; the revenues lost by the plaintiff; the deterrent effect on the defendant as well as others similarly situated; whether the defendant's conduct was innocent or willful; the potential for discouraging the defendant, the value of the copyright, the difficulty of proving actual damages, and the circumstances of the infringement.

*Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03-cv-4844, 2008

WL 1775512, at *2 (N.D. Ill. Apr. 17, 2008); *Ali v. Final Call, Inc.*, 289 F. Supp. 3d 863, 869

(N.D. Ill. 2017).

The amount of an award of statutory damages is determined by the jury. *Feltner v.*

*Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) ("The right to a jury trial includes

the right to have a jury determine the amount of statutory damages, if any, awarded to the

copyright owner. It has long been recognized that 'by the law the jury are judges of the

damages.'"). Therefore, EIG can only identify the range of statutory damages as set forth in the

Copyright Act for each work infringed. To the extent the revenues lost by EIG are a factor for

the jury in determining statutory damages, EIG has already provided Constellation with all

licensing rates for each type of subscription and/or method of purchasing the NIW publication.

D.E. 1 at ¶¶17-18, D.E. 98-2 at pp. 3-5. Therefore, Constellation has all the information

necessary to calculate EIG's licensing fees lost as a result of Constellation's infringement. *Id.*

Constellation's own records have revealed that it copied issues of NIW onto a shared

corporate drive since at least as early as 2011 making NIW available to other unidentified

Constellation employees. By routinely and systematically saving infringing copies of NIW to a

shared drive, Constellation improperly treated its two-copy subscription to NIW as if it had

purchased a corporate-wide license that would have allowed it to provide all employees with

copies of the publication. In EIG's view, the most appropriate method to calculate EIG's lost

licensing fees is based on the $200,000 per year single-publication enterprise license described in

EIG's first amended response to Interrogatory No. 2, which would also cover all additional

recipients beyond the two copies permitted under the subscription agreement. D.E. 98-2 at p. 4.

EIG's lost revenues are therefore $1,800,000 based on the information produced by Constellation

to date in discovery.  The foregoing was communicated to Constellation's counsel back on

March 25, 2022 but Defendant nevertheless filed this motion. Ex. A.

EIG has made a complete response to Constellation's interrogatory.  EIG has elected to

recover statutory damages under the Copyright Act and the amount of statutory damages will be

decided by the jury based on the range of statutory damages set forth in the Copyright Act.

Furthermore, EIG has produced documents and interrogatory answers setting forth all methods

of calculating EIG's lost licensing fees, and Constellation has all of the information necessary to

determine to what extent EIG's lost subscription revenue will factor into any award of statutory

damages.  In answering an interrogatory directed towards a plaintiff's theory of damages, a party

does not need to provide a "precise assessment of how the facts connect to the applicable legal

standard or a calculation of the ultimate damages claims."  *Perez v. RUF US, Inc.*, No. 1:20-cv-

6158 (N.D. Ill. December 8, 2021), D.E. 53 at *9 (McShain, J.) (quoting *Milwaukee Elec. Tool*

*Corp. v. Chevron N. Am. Inc.*, No. 14-cv-1289-JPS, 2017 WL 2445845, at *7 (E.D. Wis. Jun. 6,

2017). It is sufficient to identify the general legal theory underlying the damage request. *Id.*

  **B.**  **Calculations of Copyright Damages Caused By Third Parties in Unrelated Litigations is Not Relevant Nor Proportional**

In a misguided effort to discover damages estimates made by EIG in other, unrelated

litigations, Constellation propounded its Request for Production No. 20 which seeks:

> *All documents related to any assertion (including without limitation litigations, informal assertions by letter, and settlement discussions) of copyright infringement by you against a third party that contain a calculation or explanation of damages (either by you or by a third party), including without limitation initial disclosures, interrogatory responses, expert reports, deposition transcripts, hearing/trial transcripts, briefs, letters to the accused infringers, letters to mediators, or presentations.*

D.E. 98-3, pp 10-11. EIG objected to this Request as it was not proportional to the needs of this

case and is irrelevant and burdensome. *Id*. The parties ventilated the issues concerning this

document request in several meet and confers to no effect.

EIG has been required to protect its copyrights by bringing suit against over 70 infringers of its various publications (notably, not a single case has ever been dismissed under Rules 12 or 56 of the Federal Rules of Civil Procedure). In each instance, the parties' arguments regarding possible damages varied widely depending on the unique facts and circumstances of the infringement in each case. The nature and scope of the infringing activity of each of the 70-odd defendants varied greatly and any estimate made in a third party litigation would be informed by a wide variety of factors including: whether the infringement involves a daily, weekly or monthly publication; the length of the infringement; the nature and scope of the infringement, whether there was widespread distribution of copies or not; the documentary evidence of infringement, or lack thereof; evidence of willfulness; the infringer's efforts to conceal its infringement; the infringer's intent to make amends, etc. In short, every case presents different facts to consider in any "calculation of damages." Further, the majority of cases have been resolved based on future licensing agreements without any calculation of damages for each infringed work at all. In two instances, juries have solely decided the statutory damages for each work, which Constellation is aware of. However, this is the first case that EIG has ever brought for infringement of its copyrights in the NIW publication so no prior litigation has ever evaluated the damages associated with the infringement of NIW.

Any possible relevance is heavily outweighed by the enormous burden and expense of sifting through the discovery requests, depositions, settlement correspondence, mediation statements, etc. for every single litigation (or enforcement effort) that EIG has ever pursued against a third party "that contains a calculation of damages" particularly when such "calculation" is based on disparate facts and circumstances and would be inapposite to the facts at bar. Finally, any monetary demands made in settlement by EIG are protected under Rule 408

of the Federal Rules of Evidence and are also subject to confidentiality provisions within the
settlement agreements themselves which were nearly universally included at the defendant's
behest.

Constellation is fishing for documents that are neither relevant nor proportionate to the
needs of this case while, in the bargain, placing a massive burden on EIG to search through the
records of 70 plus litigations and enforcement efforts for settlement estimates or demands made
in factually distinct cases.  EIGs counsel sought to resolve the issue by asking Constellation to
narrow the request and then offering to reconsider its objections to this Request **if** Constellation
identified specific litigations from the public record that it believes are analogous and similar to
Constellation's willful infringement in the present matter.  Constellation did not accept that offer.
Ex. A; Ex. B at pp. 1-2.

**C.    EIG Has Produced All Non-Privileged Information Relating to EIG's First
          Notice of Constellation's Infringement**

The core of Constellation's complaint concerning the sufficiency of EIG's responses to
Constellation's Interrogatory No. 3 and Requests Nos. 6 and 7 is that, after EIG conducted a
reasonable search for responsive documents, there are no nonprivileged responsive documents
other than the underlying SendGrid data (that has already been produced) that indicated the
infringement by Constellation of the NIW publication.  In previous meet and confers and in a
March 25, 2022 email to Constellation's counsel, EIG has explained to Constellation that
Deborah Brown, a customer service representative whose responsibilities included fulfilment,
regularly accesses information provided by EIG's email delivery service vendor SendGrid via its
web-based "dashboard" to confirm, for instance, that publications were processed and delivered
to EIG's subscribers when potential issues with delivery arise. Ex. A. at pp. 2-3. In March of
2019, Ms. Brown noticed unusual activity with respect to Constellation's account based on the

8

SendGrid information. *Id.* Ms. Brown orally reported her findings to John Hitchcock, her supervisor at EIG, who then reviewed the SendGrid data with David Babski, a then-employee of EIG, as further described in EIG's first amended responses to Interrogatory No. 3. D.E. 98-2, pp. 5-6.

All SendGrid data relating to Constellation subscription to NIW was produced on October 22, 2021. Indeed, to resolve this discovery dispute, EIG has agreed to produce all SendGrid data in EIG's possession from all subscribers even though such data relates to EIG's other publications that are not at issue here, and involve all of EIG's other subscribers, who are not relevant. Ex. C at p. 4. The amount of data is considerable (26 gigabytes) and comes at considerable cost (approximately $15,000). Constellation was not satisfied however and refused to withdraw this part of its motion to compel. *Id.*

**D.      EIG Does Not Have the Ability To "Track" Constellation's Emails**

EIG has produced all documents responsive to Constellation First Document Request Nos. 14 and 15 that were located after a reasonable search. Contrary to the misleading impression created by Constellation in its motion papers, EIG does <u>not</u> "track" its subscriber's emails. The only way for EIG to (indirectly) monitor usage of EIG's publications by its subscribers is through SendGrid's open tracking services as modified in 2018, that relies on publicly available information regarding standard internet protocols common to all internet marketing and email solicitations. EIG produced the SendGrid data relating to Constellation as well as EIG's communications with SendGrid it was able to locate after a reasonable search (including "chatlogs" with SendGrid) on October 22, 2021 and March 11, 2022, and have also referred Constellation to SendGrid's website for more information about SendGrid's services. As EIG advised Constellation on March 25, 2022, SendGrid's abilities to monitor delivery email openings is the same for Constellation as for any other third party. EIG has already produced all

SendGrid data relating to Constellation, including the data which EIG reviewed and relied upon to bring this lawsuit. EIG also stated that Constellation could ask for further detail from Deborah Brown at deposition. It bears noting that Constellation also received documents from SendGrid pursuant to a subpoena and will be receiving, as indicated above, all SendGrid data in EIG's possession relating to all of its publications for all of its subscribers. Constellation has been advised nothing further exists and yet persists with the present motion.

**E.      EIG's Financial Records are Not Relevant to any Claim, Defense or Counterclaim in this Proceeding**

As a threshold matter, EIG has no documents responsive to Constellation's Second Document Request No 15 which seeks "[d]*ocuments sufficient to show the revenue achieved and costs incurred from enforcing copyright infringement claims to NIW*." D.E. 98-5 at p. 9. As mentioned above, this case is the first case brought by EIG that involves the copyrights in the NIW publication and therefore there are no documents responsive to this Request.

Second, EIG has agreed to produce what documents it has, after a reasonable search, that are responsive to Second Document Request No. 14. That Request seeks "[d]*ocuments sufficient to show the quantity sold, gross revenue, and profits from the sales of, subscriptions and licenses to NIW.*" D.E. 98-5 at p. 8. EIG will produce documents that reflect the "quantity sold" and "revenue received" from the licensing and sale of the NIW publication. However, there are no responsive documents that reflect the profit attributable to the licensing of NIW. All sixteen EIG publications are created and produced through the collaborative efforts of EIG's personnel, including reporters and editors as well as support and IT staff, regardless of their location in EIG's worldwide offices. The standard operating expenses, such as salaries, rent, cost of business equipment and other business expenses, are shared across all 16 publications. The costs attributable to the creation of NIW, or any of the other 15 EIG publications, is not separated out

from the overall costs of EIG's publishing business. As such, there are no responsive documents that reflect any profit solely attributable to NIW, as EIG explained to Constellation during the meet and confer process.

Finally, EIG maintains its objections with respect to Second Document Request 18. D.E. 98-5 at p. 10. That Request seeks: "*Documents sufficient to show your revenues, costs, and profits for each year since 2011.*" *Id.* Although the parties have met and conferred numerous times on this issue, Constellation has failed to articulate the relevance of EIG's overall revenues, costs and profits to the claims, defenses and counterclaims at issue in this case. The only relevant financial information of EIG is the lost licensing revenue EIG lost due to the acts of infringement of Constellation. *See* Section II.A., *supra*. That information has some relevance to one of several factors considered by the jury in determining the award of statutory damages. *E.g.*, *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03-cv-4844, 2008 WL 1775512, at *2 n. 3 (N.D. Ill. Apr. 17, 2008) (the revenues lost by the plaintiff is a factor in determining statutory damages). As noted above, EIG has produced all responsive documents and information from which Constellation may determine EIG's licensing revenue lost as a result of Constellation's infringement. Request No. 18 therefore is excessive. *Cf.*, *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923, 926 (N.D. Ill. 2003) (Request for broader discovery into all of developer's business activities anywhere was excessive). In any event, at a meet and confer held on April 27, 2022 to resolve this impasse, EIG offered to produce its corporate tax returns for the years 2011 through 2020 and request an extension of time to respond to the instant motion to give Constellation time to review the tax returns to evaluate whether production of the tax returns would resolve the dispute, but Constellation's counsel declined. Ex. C at p. 4.

11

Courts have previously found that EIG's finances and the "[d]etails regarding the expenses EIG incurs to run its business" were "neither relevant nor proportional to the needs of the case." *See Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP,* No. 14-cv-1903, 2017 WL 363004, at *9 (S.D. Tex. Jan. 24, 2017).

The cases Constellation rely on are inapposite. *Fields v. Gen. Motor Corp.*, No. 94-cv-4066, 1996 WL 14040 (N.D. Ill. Jan. 14, 1996) involved a contractual dispute between a car dealership and a car manufacturer. The car dealership claimed damages based in part on the lost value of one of its franchise dealerships due to the defendant's breach. *Id.* at *1. Because the plaintiff claimed damages to the value of its business, the Court found that the defendant was entitled to discovery regarding the businesses' value, and ordered production of financial documents. *Id.* at *3-5. Here, in contrast, EIG is not claiming damage to the value of its company as a result of Constellation's infringement. Instead, as discussed in Section II.A above, EIG has elected statutory damages. To the extent that EIG's actual damages are relevant to the calculation of statutory damages, actual damages are measured solely on the basis of lost licensing fees: that is, the cost of the subscriptions that Constellation should have purchased to cover its unlawful copying and distribution of NIW. Constellation knows the extent of its infringement, and, as further discussed in Section II.A above, EIG has produced all documents necessary for Constellation to calculate EIG's lost licensing fees, including pricing documents for every license option offered by EIG. EIG's overall finances and subscription sales have no relevance to its lost licensing fees Constellation should have paid but for its infringement. The *Fields* decision is inapposite.

The cases Constellation cites relating to bias and motive are no help to Constellation. Both *United States v. Abel*, 469 U.S. 45, 52, (1984), and *United States v. Jamison*, 635 F.3d 962,

12

965 (7th Cir. 2011), are concerned with evidence relating to a *witness's* bias for or against a

*party*, in other words the "relationship between a party and a witness which might lead the

witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Abel*,

469 U.S. at 52. These cases are entirely inapposite to Constellation's motion, which seeks EIG's

financial documents for the purposes of its fraud counterclaims purportedly to show that EIG had

a motive to "entrap" Constellation, even though, after a year of discovery, Constellation has no

evidence that EIG actually "entrapped" Constellation into infringing its publications.[1]

Constellation's reliance on its counterclaims as the basis for the relevance of EIG's

financial information is misplaced. Constellation cannot sustain its counterclaim assertion that it

is somehow fraud or a deceptive or unfair business practice to enforce one's federal copyrights

against infringers as provided for and in full compliance with the Copyright Act, 17 U.S.C. §

101, *et seq*. Constellation asserts through its counterclaims that owners of federally-registered

copyrights, who seek to enforce their rights against infringers, are in violation of Illinois law

unless they satisfy additional conditions that are far beyond the requirements articulated by the

U.S. Congress in the Copyright Act. Furthermore, the Court dismissed Constellation's original

fraud counterclaims, and EIG will move again to dismiss Constellation's repleaded fraud claims.

Accordingly, in order to preserve the time and resources of the Court and the parties, EIG

respectfully submits that any decision on Constellation's document requests relating to EIG's

finances should be stayed pending the resolution of EIG's forthcoming Motion to Dismiss

Constellation's First Amended Counterclaims.

---

[1] The sole source for Constellation's "entrapment" allegations is a single email from Mark Hoff written in 2007, discussed in further detail below. When asked at a later deposition what he meant by EIG's "entrapment efforts" Mr. Hoff responded that he simply meant EIG's attempts to elicit further information from a subscriber when infringement is suspected, typically by asking the subscriber how they use the publication. Constellation has been provided with a complete copy of Mr. Hoff's deposition and is aware of his testimony. *See* Section II.F below.

### F.    EIG Has Produced Its Copyright Enforcement Policy

EIG has fully responded to Constellation's First Document Request No. 25 by producing, after a reasonable search, documents responsive to its document request, including the February 19, 2010 memo from John Hitchcock, Managing Director of Sales, Marketing and Business Development of EIG to "All Sales, Account Development and Account Services Staff". The copyright enforcement policy outlined in that memo was instituted in 2010 and EIG has been vigilant in defending its copyrights – its most important asset – from infringers, like Constellation.  EIG also produced to Constellation the subscription agreements that were sent to Constellation as well as the copyright notices and warnings that appeared within each issue of NIW and every email delivering NIW to Constellation.  Those documents reflect EIG's corporate policy that, among other things, stated that unauthorized copying will be considered willful copyright infringement.

Constellation seeks to confuse the issue by suggesting that two other documents that were produced in the *Kayne* litigation are also EIG's "policies."  The documents referenced clearly indicate that these emails are not stated corporate policies of EIG nor directed to all EIG staff. The emails make proposals, suggestions and observations: one made in 2005 by Tom Wallin to management; and one in 2007 by Mark Hoff to EIG's Chief Financial Officer.  These emails are not, and do not constitute, the corporate policies of EIG and are not responsive to Constellation's First Document Request No. 25. John Hitchcock's February 19, 2010 memo is EIG's corporate policy as communicated to EIG staff and was produced.  There are no other corporate copyright policies and Constellation motion to compel on this issue should be denied.

It bears noting that Constellation's sole source for its risible "entrapment" claim is based on the 2007 email written by former EIG employee Mark Hoff.  As a threshold matter, it is Constellation's choice and within its power whether or not to commit copyright infringement

14

(despite its own corporate policy). The claim that EIG entrapped Constellation to infringe NIW's copyrights is without any basis in fact or law and no court has concluded that there is merit to such a claim, often dismissing the same at the pleadings stage or on summary judgment. In any event, in a deposition taken in the *Kayne* case, Mr. Hoff testified under oath that he used the wrong word in the email and that by "entrap" he meant efforts undertaken by EIG to elicit further information from a subscriber in order to determine whether a subscriber is infringing EIG's copyrights. That was done "typically by asking [the subscriber] who was on the distribution list." *Energy Intelligence Group, Inc. v. Kayne Anderson*, No. 4:14-cv-01903 (S.D. Tex.), D.E. 171-20, Depo. Tr. of Mark Hoff at 80:2 – 81:15. The transcript of the Hoff deposition is publicly available and has been produced to Constellation yet Constellation nevertheless claims that Mr. Hoff's email is corporate policy when it is evidently not.

G.     **Constellation's Request for All Testimony and Expert Reports Is Moot As EIG has Produced the Requested Documents**

On March 28, and April 29, 2022, EIG produced all transcripts of deposition testimony of its own representatives and expert reports despite the fact that such litigations did not involve the NIW publication, were brought against unrelated third parties and involved entirely different facts and circumstances. Nevertheless, EIG has produced all documents in its possession, custody and control responsive to Constellation's Third RFP Nos. 1-4 and Constellation's motion is moot on this point.

## III.     CONCLUSION

In view of the foregoing arguments, EIG respectfully requests that the Court deny Constellation's Motion To Compel on the grounds that Constellation's motion is either moot or lacks merit as the discovery requested is neither relevant nor proportional to the needs of the case.

Dated:  May 2, 2022

By:  /s  Stephen M. Ankrom

Robert L. Powley (Attorney-In-Charge)
rlpowley@powleygibson.com
James M. Gibson
jmgibson@powleygibson.com
Thomas H. Curtin
thcurtin@powleygibson.com
Stephen M. Ankrom
smankrom@powleygibson.com

POWLEY & GIBSON, P.C.
60 Hudson Street, Suite 2203
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085

and

Binal J. Patel
bpatel@bannerwitcoff.com
Katherine Laatsch Fink
kfink@bannerwitcoff.com

BANNER & WITCOFF, LTD.
71 South Wacker Drive
Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001