IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENERGY INTELLIGENCE GROUP, INC. and ENERGY INTELLIGENCE GROUP (UK) LIMITED,<br><br>    Plaintiffs and<br>    Counterclaim Defendants,<br><br>    v.<br><br>CONSTELLATION ENERGY GENERATION, LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Civil Action No. 1:20-cv-03983<br><br>Hon. Joan B. Gottschall<br>Magistrate Judge Heather K. McShain |

**PLAINTIFFS' MOTION TO COMPEL
DEFENDANT'S RESPONSES TO CERTAIN DISCOVERY**

Plaintiffs and Counterclaim Defendants Energy Intelligence Group Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG") hereby moves to compel Defendant and Counterclaim Plaintiff Constellation Energy Generation, LLC ("Constellation") to provide certain discovery under Federal Rule of Civil Procedure 37 and Local Rule 37.2.

**Background**

This case involves Constellation's choice for nearly a decade systematically and routinely to infringe EIG's copyrights in Nuclear Intelligence Weekly ("NIW") by forwarding copies of the publication to various Constellation employees as well as storing infringing copies of NIW on a shared drive to which numerous Constellation employees had access. Constellation has failed to provide the following information: (1) the identity of the person(s) who read the terms and conditions for Constellation's subscription to NIW; (2) documents related to third-party publications that Constellation copied to the same shared drive where Constellation also stored

an archive of NIW works; and (3) documents sufficient to identify and describe Constellation's firewalls and other security systems and measures employed by Constellation in connection with its computer and email systems.

## Legal Standard

District courts enjoy broad discretion when considering motions to compel. *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 646 (7th Cir. 2001). The district court is "in the best position to decide the proper scope of discovery and to settle any discovery disputes." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495 (7th Cir. 1996). In ruling on a motion to compel, the discovery standard set forth in Federal Rules of Civil Procedure 26(b) applies. *Mendez v. City of Chicago,* 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 of the Federal Rules of Civil Procedure "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, No. 20-CV-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021); Fed. R. Civ. P. 26(b)(1). "In determining the scope of discovery under Rule 26, relevance is construed broadly and is not limited to issues raised in the pleadings. *Id*. Discovery must also be proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Murphy,* 2021 WL 1426875, at *2.; Fed. R. Civ. P. 26(b)(1). A court must also "limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Federal Rules of Civil Procedure 26(b)(1)." *Murphy,* 2021 WL 1426875, at

2; Fed. R. Civ. P. 26(b)(2)(C). A proponent of a motion to compel discovery bears the initial burden to prove that the information sought is relevant. *PsyBio Therapeutics, Inc. v. Corbin,* No. 20-cv-3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021). If the discovery appears relevant, the party objecting to the discovery request has the burden to show why that request is improper. *Burkybile v. Mitsubishi Motors Corp.*, No. 04-cv-4932, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006).

## Argument

**I. Constellation Should be Compelled to Provide the Identity of the Constellation Employee(s) Who Read the Terms and Conditions for its Subscription to NIW**

EIG's Interrogatory No. 3 and Constellation's response follow:

> **REQUEST NO. 3**: Identify the person(s) who read, and/or was charged with the responsibility to read, the terms and conditions of the subscription agreements through which Defendant received Plaintiffs' Publications during the Applicable Period.
>
> **ANSWER**: In addition to its General Objections, Exelon Gen. Co. objects to this Interrogatory as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information that is not relevant to any party's claim or defense to the extent it requests information concerning publications other than NIW.
> Subject to and without waiving the foregoing General and Specific Objections, Exelon Gen. Co. responds as follows: Jeanne Tortorelli is a person responsible for its subscriptions to NIW.
>
> **SUPPLEMENTAL ANSWER**: Constellation incorporates by reference the response and objections in its prior Answer to this Interrogatory and, answering further, Constellation states as follows:
> Constellation is not aware of any employee charging another with reading the terms of the NIW subscription agreements. The following individuals were each involved administratively with at least one instance of Constellation subscribing or renewing its subscription to NIW as a designated contact, signatory, or payment facilitator: Haskoo Kim, Jeanne Tortorelli, Anthony Wlezien, and James Nevling. Jeanne Tortorelli viewed the terms of at least one instance of the subscription agreement before signing it.

Ex. A at 4-5.

Constellation's initial and supplemental answers are not responsive. Stating that "Jeanne

3

Tortorelli is a person responsible for its subscriptions to NIW" and that she "viewed" the subscription agreement does not answer Interrogatory No. 3, which calls for the identity of the person who actually read the terms and conditions, or for Constellation to respond by stating that nobody read the terms and conditions. A simple question, but one Constellation is reluctant to answer because almost all of Constellation's affirmative defenses and all of its counterclaims are based on an alleged misunderstanding as to what the terms and conditions allowed Constellation to do with NIW. *See* Dkt. No. 96 at 20-46. An interrogatory seeking the identity of witnesses with relevant knowledge as to an element of several of Constellation's affirmative defenses and counterclaims is appropriate and well within the scope of Rule 26. *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 2644243, at *5 (N.D. Ill. June 27, 2019) (noting that an interrogatory asking the defendant to identify witnesses with knowledge about the underlying facts of the investigation is within the permissible scope of discovery); *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 346 (N.D. Ill. 2005) ("[A] party may properly inquire into the identity and location of persons having knowledge of relevant facts") (citing *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cty., Ill. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984).

      Constellation's counterclaims are based almost entirely on allegations that Constellation was misled by the terms and conditions of the subscription agreements to NIW. *E.g.,* Dkt. No. 96 at ¶¶ 26-37. Therefore, it is imperative then that Constellation identify the individual(s) who actually read the terms and conditions, so that EIG can investigate Constellation's claims that it was misled by taking the deposition of the individual(s) who read the terms and were purportedly misled. Interrogatory No. 3 was served on Constellation in June of 2021, and Constellation has had ample time to investigate and determine who at Constellation, if anyone, read the terms and

4

conditions. Incredibly, Constellation continues to claim that it was misled by the terms and conditions of the NIW subscription agreements, yet, even after a year of investigation, cannot identify a single Constellation employee who actually read them. This fact alone speaks volumes to the merit of Constellation's defenses and counterclaims.

Identifying individual(s) who read the terms and conditions is also relevant to Constellation's state of mind and the willfulness of its infringement. Infringement is willful "if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). Whether the infringement is willful is a factor the trier of fact can consider when determining the amount of statutory damages. *E.g, Chi-Boy Music v. Charlie Club, Inc*., 930 F.2d 1224, 1229-30 (7th Cir. 1991). The terms and conditions explicitly prohibit the copying, distribution, and archiving copies of NIW, precisely the acts of infringement that Constellation committed, and EIG is entitled to know the identity of the individual(s) who read the terms and conditions so EIG may take their depositions regarding their understanding of the terms and conditions and whether they knew that Constellation's actions with respect to copying, forwarding and storing copies of NIW constituted copyright infringement. This goes to the issue of whether Constellation's conduct was willful, which can impact the amount of statutory damages. 17 U.S.C. § 504(c); *Chi-Boy Music*, 930 F.2d at 1229-30 ("Moreover, when the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations.")

Constellation's boilerplate objections that the interrogatory is overly broad, unduly burdensome, not relevant and not proportional to the needs of the case are unsupported by any facts and should be disregarded. *Fudali v. Napolitano,* 283 F.R.D. 400, 403 (N.D. Ill. 2012)

(boilerplate objections are an insufficient basis to refuse to comply with discovery and are "tantamount to not making any objection at all"). Constellation has previously noted that its investigation to date has not revealed information responsive to the portion of the interrogatory specifically directed at 'who read, and/or was charged with the responsibility to read, the terms and conditions'...." Ex. B at 1. Presumably, Constellation has interviewed the people who ordered, received, distributed, and saved copies of NIW and renewed the annual subscription, which provided the terms of use. Indeed, in order to allege several of its affirmative defenses and counterclaims, Constellation was obligated by Rule 11 to conduct the due diligence necessary to confirm the facts sufficient to allege such defenses and counterclaims, including who read and relied upon the terms and conditions in the subscription agreements, and when. This is a simple, straightforward question that seeks information directly relevant to issues in this case and poses no undue burden on Constellation to talk to its own employees about a critical element of its affirmative defenses and counterclaims. If the result of Constellation's investigation is that no Constellation employee read the terms and conditions of the subscription, then Constellation should amend the interrogatory responses to so indicate.

## II. Constellation Should Be Compelled to Produce Documents Related to Third-Party Publications Archived on Constellation's Computer Networks

EIG's Request for Production No. 49 and Constellation's response are as follows:

**REQUEST NO. 49**: All documents and things in Defendant's possession, custody, or control relating to any third-party copyrighted publications downloaded, stored, saved, archived, or retained on any shared computer drive(s), server(s), and/or electronic storage system(s) during the Applicable Period. This request includes documents related to any third-party publications saved, copied, stored, and/or archived to the "K: drive" and the "publications folder" referenced by Defendant's employees. See ExGen0002616, ExGen0000045, and ExGen0000068.

**RESPONSE**: Constellation objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information that is not relevant to any party's claim for seeking documents concerning third party publications. Constellation also objects to this Request as overly broad and unduly

6

> burdensome, particularly through its use of the terms "All documents and things," "relating to," "related to," and "any third-party copyrighted publications," and because it requests material spanning over a decade. Constellation objects to this Request to the extent it seeks confidential or proprietary information, including third party information.

Ex. C at 4.

Constellation created a historic archive of NIW issues published over nearly a decade of time by saving infringing copies to a "publications folder" on a shared internal drive called the "K: drive" to which numerous Constellation employees had access. Documents produced by Constellation indicate that Constellation also saved other third-party copyrighted publications to the same shared drive where infringing issues of NIW were stored. For instance, documents produced by Constellation show that one such third-party publication, namely *Platts Nuclear Fuels*, was saved on the K: drive along with NIW. *Platts Nuclear Fuels* is a competing publication to NIW, that, like NIW, provides news and analysis relating to the nuclear energy industry and, also like NIW, is priced by the number of copies. Documents produced by Constellation indicate there are likely only relatively few third-party copyrighted publications at issue, including *Fuel Cycle Week*, TradeTech's *Nuclear Market Review*, NAC International's *Nuclear Fuel Market Issues & Insights*, and Energy Resources International's *Market and Risk Report*, in addition to *Platts Nuclear Fuels*.

Request for Production No. 49 seeks documents related to Constellation's saving of third party copyrighted publications to the same shared drive where infringing NIW issues were stored. Specifically, EIG seeks documents that identify the number of licensed copies of the third party copyrighted publications that Constellation purchased, documents showing whether copies of these third-party copyrighted publications were saved to the shared drive or distributed by email, and any documents indicating that Constellation had the copyright owner's permission to make said copies.

7

This information is directly relevant to Constellation's counterclaims. Constellation 's counterclaims accuse EIG of deliberately drafting the terms and conditions of the NIW subscription agreements so that facts are concealed such that Constellation is misled as to what is and is not permissible use of NIW, and, by doing so, luring and entrapping Constellation into infringing NIW. Dkt. No. 96 at ¶¶ 13-37. If Constellation is infringing multiple publications, not only is that evidence probative of the willfulness of Constellation's infringement of NIW, it shows a pattern of infringement that contradicts Constellation's assertions that its infringement of NIW was due to being somehow induced or entrapped by EIG. Constellation's boilerplate objections that the interrogatory is overly broad, unduly burdensome, not relevant and not proportional to the needs of the case are without any merit. *Fudali,* 283 F.R.D. at 403. Constellation's objection that the request for production seeks confidential or proprietary information is not sufficient to withhold documents, as there is a Protective Order entered in this case and the privilege is not defined. In any event, under the terms of the Protective Order, it is improper to withhold documents on the grounds that they require greater protection than afforded by the Protective Order. Dkt. No. 54 at ¶ 8. Instead, the burden is on Constellation to move for a further order protecting such alleged confidential and proprietary information. *Id.*

Request for Production No. 49 seeks information that is relevant to Constellation's counterclaims and Constellation should be compelled to produce responsive documents.

### III. Constellation Should Be Compelled to Produce Documents Sufficient to Describe Its Network Security Systems

EIG's Request No. 41 and Constellation's responses are as follows:

> **REQUEST NO. 41:** Documents and things in Defendant's possession, custody, or control sufficient to identify any firewall or other systems and security measures employed by Defendant in connection with Defendant's computer and email systems including, without limitation, documents concerning the use and identity of the software and systems (and the versions thereof) utilized by Defendant for its firewall and other security measures for each year of the

8

>Applicable Period. The Request includes network diagram(s) and configuration file(s) relating to all identified software and systems.
>
>**RESPONSE:** In addition to its General Objections, Exelon Gen. Co. objects to this Request as overly broad, unduly burdensome and not proportional to the needs of the case for its request for information that is not relevant to any claim or defense in this action. Exelon Gen. Co. also objects to the Request because certain security documents are so sensitive that they should not be produced absent a compelling reason, even if they had some minimal theoretical relevance.

Ex. D. at 24.

Request No. 41 seeks information that is relevant to Constellation's affirmative defenses and counterclaims. Constellation has asserted the affirmative defenses of statute of limitations and failure to mitigate damages (Dkt. No. 96), claiming that EIG knew or should have known of Constellation's infringement yet took no action to stop Constellation. Constellation's counterclaims also allege that EIG was aware of Constellation's infringement but delayed filing suit. It is not seriously disputed that Constellation infringed NIW behind its firewalls and on its private computer networks and email systems. Moreover, there is no evidence that Constellation ever advised or otherwise volunteered to EIG that it was engaging in serial infringement of the NIW publication. Simply put, EIG had no way of knowing what Constellation was doing "behind closed doors." EIG is entitled to discovery regarding these systems in order to defend itself from Constellation's assertions that EIG could have known about Constellation's infringement.

In the meet and confer process, Constellation explained that its primary objection to Request for Production No. 41 is that it calls for confidential and sensitive information about Constellation's firewall and network security systems. There is no privilege exempting confidential or sensitive business information from discovery. *Harrisonville Telephone Co. v. Illinois Commerce Com'n*, 472 F.Supp.2d 1071, 1077 (S.D. Ill. 2006). In order to avoid unnecessary disclosure of legitimately confidential information, confidential information is

9

customarily made available under a protective order pursuant to Rule 26(c). *Id.* In this case, the Parties stipulated to a Protective Order which the Court subsequently entered. Dkt. No. 54. The Protective Order in place in this lawsuit addresses Constellation's objections to Request No. 41 by limiting the disclosure of designated confidential information. *Id.* at ¶ 5. Moreover, as noted above, the Protective Order specifically prohibits the withholding of documents on the ground that they require greater protection than afforded by the Protective Order. *Id.* at ¶ 8. If Constellation does not believe this Court's Protective Order sufficiently protects the confidentiality and proprietary nature, if any, of its computer systems, then it is Constellation's burden to move this Court for a further protective order instead of relying on boilerplate objections. Constellation should be compelled to produce documents responsive to RFP No. 41.

## Conclusion

All three of the discovery requests discussed above are critical for EIG to defend itself against allegations in Constellations' affirmative defenses and counterclaims. Importantly, EIG is not moving to compel discovery here primarily for documents or information to support its *prima facie* case, but rather to defend against allegations, defenses, and counterclaims brought by Constellation. Constellation should not be permitted to make allegations against EIG and to bring counterclaims and then avoid disclosing discoverable information and documents EIG needs to defend itself. For the reasons set forth above, Constellation should be compelled to provide : (1) the identity of the person(s) who read the terms and conditions for Constellation's subscription to NIW; (2) documents related to third-party publications that Constellation copied to a shared drive where Constellation also stored an archive of infringed NIW works; and (3) documents sufficient to identify and describe Constellation's firewalls and other security systems and measures employed by Constellation in connection with its computer and email systems to prevent unauthorized access to Constellation's computer systems.

Respectfully submitted,

POWLEY & GIBSON, P.C.

Dated: May 13, 2022 /s/ *Stephen Ankrom*
Robert L. Powley
rlpowley@powleygibson.com
New York State Bar No. 2467553
James M. Gibson
jmgibson@powleygibson.com
New York State Bar No. 2622629
Stephen M. Ankrom
smankrom@powleygibson.com
New York State Bar No. 4609426

**Powley & Gibson, P.C.**
60 Hudson Street, Suite 2203
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085

Binal J. Patel
Illinois Bar No. 6237843
bpatel@bannerwitcoff.com
Katherine Laatsch Fink
Illinois Bar No. 6292806
kfink@bannerwitcoff.com

**Banner & Witcoff, Ltd.**
71 South Wacker Drive
Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

*Attorneys for Plaintiffs and Counterclaim-Defendants Energy Intelligence Group, Inc. and Energy Intelligence Group (UK) Limited*

**LOCAL RULE 37.2 STATEMENT**

Counsel for Plaintiffs and Counterclaim-Defendants Energy Intelligence Group Inc. and Energy Intelligence Group (UK) Limited (collectively, "EIG") certify that they have in good faith conferred with Constellation Energy Generation LLC's ("Constellation") counsel to resolve the discovery disputes raised in the preceding Motion.

Counsel met and conferred by telephone on February 10, 2022, April 12, 2022, and April 27, 2022. Louis Klapp attended all three meet and confers on behalf of Constellation. James Gibson and Stephen Ankrom represented EIG at the February 10 and April 12 conferences, and James Gibson, Thomas Curtin, and Stephen Ankrom represented EIG at the April 27 conference. These meet and confers were memorialized in correspondence, true and correct copies of which are attached as Exhibits E, F, and G. The parties also exchanged follow up correspondence via email and letter following the conferences.

/s/ *Stephen M. Ankrom*
Stephen M. Ankrom